48 So.2d 565

**BUILDING COMMISSION et al. v. JORDAN.**

**3 Div. 574.**

Supreme Court of Alabama.

Nov. 9, 1950.

Albert Boutwell, of Birmingham, for appellant.

A. A. Carmichael, Atty. Gen., and Silas C. Garrett, III, and Lee Edw. Barton, Asst. Atty. Gen., for appellee.

LAWSON, Justice.

This is a declaratory judgment proceeding instituted for the purpose of securing a judicial declaration as to whether or not Senate Bill 172 of the 1949 Regular Session of the Legislature of this state became a law.

In this proceeding, it is not questioned that the said Senate Bill 172 was duly passed in a constitutional manner by both the Senate and the House of Representatives of this state and was thereafter signed by the presiding officer of each house on August 26, 1949, which was the thirty-fourth legislative day.

It was the contention of plaintiffs that the said Senate Bill 172 became a law although it was not signed by the Governor and in fact was returned to the Senate by the Governor with a message expressing his disapproval, and no further action thereon was taken by the Senate. This position of plaintiffs is anchored on their assertion that the Governor's effort to veto the bill was inefficacious due to his failure to return the bill to the Senate within the time prescribed by § 125 of the Constitution, and that as a result of such failure the provisions of § 125 of the Constitution operated to impress the bill, as signed by the presiding officers of the two houses, with the character and quality of a completed statute.

On the other hand, the defendant took the position that said Senate Bill 172 was returned to the Senate within the time prescribed by § 125 of the Constitution with the Governor's veto, and that since the bill was not subsequently passed over the Governor's veto, it never became the law of this state.

The appeal is by the plaintiffs below from a judgment upholding the contention of defendant. In part the trial court declared that "Senate Bill 172, of the Regular Session of the legislature of Alabama of 1949, was in a constitutional manner, vetoed by the Governor of Alabama and never became, and is not now, a valid law of the State of Alabama."

Under our organic law, an important part in the performance of the legislative function is apportioned to the Governor. The extent of that legislative function thus imposed on the Governor is, in so far as it affects the questions presented on this appeal, to be found in § 125 of the 1901 Constitution of this state, which section is as follows: "Every bill which shall have passed both houses of the legislature, except as otherwise provided in this constitution, shall be presented to the governor; if he approve, he shall sign it; but if not, he shall return it with his objections to the house in which it originated, which shall enter the objections at large upon the journal and proceed to reconsider it. If the governor's message proposes no amendment which would remove his objections to the bill, the house in which the bill originated may proceed to reconsider it, and if a majority of the whole number elected to that house vote for the passage of the bill, it shall be sent to the other house, which shall in like manner reconsider, and if a majority of the whole number elected to that house vote for the passage of the bill, the same shall become a law, notwithstanding the governor's veto. If the governor's message proposes amendment, which would remove his objections, the house to which it is sent may so amend the bill and send it with the governor's message to the other house, which may adopt, but can not amend, said amendment; and both houses concurring in the amendment, the bill shall again be sent to the governor and acted on by him as other bills. If the house to which the bill is returned refuses to make such amendment, it shall proceed to reconsider it; and if a majority of the whole number elected to that house shall vote for the passage of the bill, it shall be sent with the objections to the other house, by which it shall likewise be reconsidered, and if approved by a majority of the whole number elected to that house, it shall become a law. If the house to which the bill is returned makes the amendment, and the other house declines to pass the same, that house shall proceed to reconsider it, as though the bill had originated therein, and such proceedings shall be taken thereon as above provided. In every such case the vote of both houses shall be determined by yeas and nays, and the names of the members voting for or against the bill shall be entered upon the journals of each house, respectively. *If any bill shall not be returned by the governor within six days, Sunday excepted, after it shall have been presented, the same shall become a law in like manner as if he had signed it, unless the legislature, by its adjournment, prevent the return, in which case it shall not be a law; but when return is prevented by recess, such bill must be returned to the house in which it originated within two days after the reassembling, otherwise it shall become a law,* but bills presented to the governor within five days before the final adjournment of the legislature may be approved by the governor at any time within ten days after such adjournment, and if approved and deposited with the secretary of state within that time shall become law. Every vote, order, or resolution to which concurrence of both houses may be necessary, except on questions of adjournment and the bringing on of elections by the two houses, and amending this constitution, shall be presented to the governor; and, before the same shall take effect, be approved by him; or, being disapproved, shall be repassed by both houses according to the rules and limitations prescribed in the case of a bill." (Emphasis supplied.)

So, omitting consideration of "appropriation bills," for which special provision is made under § 126 of the Constitution, and bills presented to the Governor within five days before the final adjournment of the Legislature, after a bill has been presented to the Governor, within the meaning of § 125 of the Constitution, he may take one of several courses, as he may be advised:

1. He may approve the bill by signing it within the period prescribed.

2. He may permit it to become a law by withholding therefrom his approving signature until the period prescribed has elapsed.

3. He may return the bill, without his signature, and within the period prescribed, to the house in which it originated, with his objections thereto, and with such amendments as would obviate his objections.

4. He may, within the period prescribed, return the bill to the house originating it, without proposing an amendment which would remove his objections.

Alternatives 3 and 4 as noted above are, in effect, affirmative disapprovals—a veto—but the subsequent legislative course is different in the two instances. As to alternative number 3, it is the legislative prerogative to consider and determine whether the amendment seasonably proposed by the Governor shall be accepted by the legislative bodies. But, as to alternative number 4, the legislative right is to decide whether the bill shall pass, notwithstanding the seasonably expressed objection of the Governor; in which event, to make the bill a law, a majority of the elected membership of each house must vote to that end.

The construction to be placed on certain provisions of § 125 of the Constitution was one of the important questions presented to this court in the case of State ex rel. Crenshaw et al. v. Joseph et al., 175 Ala. 579, 57 So. 942. There was sharp disagreement among the six justices who participated in the decision in that case as to some of the questions presented, as is evidenced by the fact that opinions were written by four of them. But a majority of the participating justices agreed that the provisions of § 125 hereinabove italicized should be construed as follows:

1. The *adjournment* of the Legislature therein contemplated is a final adjournment—the end of the session stipulated in the organic law.

2. The reference therein to *recess* is to suspensions of legislative deliberation by the house in which the bill originated, and to which the Governor must return the bill, for some measure of time beyond *one* day.

3. The period of time during which the Governor has the right to consider a bill without its becoming law independently of him must be measured by calendar days.

4. The sixth day must also be a legislative day, for the Governor is required to return the bill to the house in which it originated and such return must be made while that house is in session.

5. On the sixth day, which must be a legislative day, the Governor does not necessarily have the full calendar day in which to return a bill. He must return the bill while the originating house is in session, however brief that session may be. To that extent the full calendar day, on the sixth day, must yield to the other mentioned requirement of the organic law, namely, that the return must be made while the house in which the bill originated is in session. See In re Opinion of the Justices, 252 Ala. 541, 42 So.2d 27.

6. If the house in which the bill originated is in *recess* on the sixth day after the presentation of the bill to the Governor, two *legislative* days after reassembling are allowed the Governor to return the bill; that is, he must return it either on the day that the house in which the bill originated reassembles, or on its next legislative day.

In computing the six-day period in which the Governor has to act on a bill presented to him, the day of presentation is not included in the computation. The first day of the six-day period is the first week day following that on which the presentation is made. Such is the effect of

Opinion of the Justices, supra; Lewis, Secretary of State et al. v. Cozine et al., 234 Ky. 781, 29 S.W.2d 34. See 54 A.L.R. 339, 340.

The Senate Journal of September 9, 1949, the thirty-sixth and last legislative day of the 1949 Regular Session, shows that said bill was received by the Secretary of the Senate at 11:48 p.m., with a message from the Governor advising of the return of the bill without his approval.

The appellants, plaintiffs below, contend that Senate Bill 172 was presented to the Governor within the meaning of § 125 of the Constitution on August 26, 1949. The Senate was in session on August 26th and adjourned until September 2nd, when it came back in session. So if appellants are correct in their assertion that they have legally proven that the said bill was presented to the Governor, within the meaning of § 125, on August 26th, then it follows that the bill became a law without the Governor's approval before it was returned to the Senate on September 9th. Excluding August 26th, the day of the alleged presentation, and Sunday, August 28th, then September 2nd was the sixth calendar day and it was a legislative day. Hence, if there was a proper presentation on August 26th, then September 2nd was the last day on which the Governor could have returned the bill to the Senate.

We come now to the question of whether or not appellants showed a presentation of the bill to the Governor within the meaning of § 125 of the Constitution on August 26, 1949.

We are unaware of any constitutional provision or statute which requires that the time and manner of the presentation of a bill to the Governor be recorded. But a joint rule of the House and Senate provides as follows:

"That the Secretary of the Senate or the Clerk of the House, as the case may be, shall, when a bill is duly enrolled and signed by the presiding officers of both houses, deliver the bill to the Governor, noting thereon the day and hour and minute of delivery, and shall make a written report thereof to the House or Senate, where the bill originated, showing the number and title of the bill and time of delivery *which shall be spread upon the Journal, and shall become a part of such Journal."* (Emphasis supplied)

With reference to Senate Bill 172, the Senate Journal of August 26, 1949, the thirty-fourth legislative day, contains the following recitals:

"MESSAGE FROM THE HOUSE

"Mr. President:

"The House has passed the following Senate Bills: Also S. 172. To merge the building commission created by Section 365 of Title 55 of the Code of Alabama (1940), the commission to acquire land created by Section 15 of Title 55 of the Code of Alabama (1940), and the Alabama Building Corporation, with the Building Commission of 1945; and making an appropriation for the maintenance and operation of the Building Commission of 1945 for the next two fiscal years.

"And returns same herewith to the Senate.

"R. T. Goodwyn, Jr.
"Clerk.

"REPORT OF COMMITTEE ON ENGROSSED BILLS

"Mr. President:

"Your Standing Committee on Enrolled Bills begs leave to report that said Committee, in session, has compared the following enrolled bill with the engrossed and original bill, respectively, and finds same correctly enrolled, towit:

"S. 172. To merge the building commission created by Section 365 of Title 55 of the Code of Alabama (1940), the commission to acquire land created by Section 15 of Title 55 of the Code of Alabama (1940), and the Alabama Building corporation, with the Building Commission of 1945; and making an appropriation for the maintenance and operation of the Building Commission for 1945 for the next two fiscal years.

"R. G. Kendall, Jr.
"Chairman.

## "SIGNING OF BILLS

"'The President of the Senate, in the presence of the Senate, after the reading thereof at length had been dispensed with by a two-thirds vote of a quorum of the Senate present, and immediately after its title had been publicly read at length by the Secretary of the Senate, signed the foregoing bill; the title of which is set out in the foregoing report from the Committee on Enrolled Bills.

## "POINT OF PERSONAL PRIVILEGE

"At 5:20 o'clock P.M. Mr. [Senator] Boutwell made known to the Senate that Senate Bill 172 had been taken to the office of the Governor at 5 o'clock P.M. on August 26, 1949, to be presented to him by a clerk of the Senate after having been duly enrolled and signed by the presiding officers of both houses; and that the office of the Governor was locked and that at said time, that is 5 o'clock P.M. the Senate was in session, and that the bill could not be presented because the office of the Governor was locked. Mr. Boutwell referred to the custom of long standing of the Governor's office remaining open at all times when either the House or Senate is in session. Mr. Boutwell called the Senate's attention to the fact that Mr. O. H. Finney, Secretary to the Governor, was then on the floor of the Senate. Thereupon the bill was presented by a clerk of the Senate to Mr. Finney on the floor of the Senate, and he declined and refused to accept the same. There being no objection, the presiding officer of the Senate ordered said facts to be recited in the journal and entered as a matter of record in the journal."

The Senate Journal of September 2, 1949, the thirty-fifth legislative day, contains the following reference to Senate Bill 172:

## "REPORT OF SECRETARY

"Mr. President:

"In accordance with the provisions of Joint Rule 5 of the Senate and House of Representatives, I respectfully report the following Senate bills and Senate Joint Resolutions delivered to the Governor and the Secretary of State, with the date and hour of delivery, towit:

"S. B. 172. Delivered to the Governor, August 29, 1949, at 8:05 A.M.

"S. B. 172 delivery attempted at 5 P.M. August 26th, 1949—Governor's office closed.

### "J. E. Speight, Secretary."

It is clear that the Journal entries do not show an actual presentation of the bill to the Governor or to his secretary. Appellants do not so contend. But appellants insist that such entries tend to show an evasion of actual presentation and, therefore, a constructive presentation sufficient under the provisions of § 125 of the Constitution. Appellants' contention in this respect is two-fold. They first assert that the Governor's office should have been open to receive bills at the time of the attempt to make delivery, and that the executive's offices were closed purposely so as to prevent delivery. They next insist that it was incumbent upon the Governor's secretary to accept delivery upon the floor of the Senate and that the tender of the bill to him and his failure to accept it constituted a presentation within the meaning of § 125.

This case seems to have been tried on the theory that deliberate acts on the part of the Governor, or those authorized by him to receive bills from the legislature, to avoid presentation would constitute presentation within the meaning of § 125 of the Constitution.

In view of the way in which this case was tried, we find it necessary to decide whether or not there can be a presentation within the meaning of § 125 to any person other than the Governor. That question has not heretofore been determined by this court, although it was considered in the case of State ex rel. Crenshaw et al. v. Joseph et al., supra: but in that case Justices Sayre, Mayfield and Somerville declined to finally pass on the question. The other three participating justices, however, seem to have been of the opinion that a presentation within the meaning of § 125 may be had to the recording secretary of the Governor.

We are of the opinion that such a presentation may be made by delivery to the recording secretary of the Governor or other person to whom that authority has been delegated by the Governor.

We are in accord with the conclusion reached on this point, as well as the reasons given for that conclusion, in the opinion of Mr. Justice McClellan in State ex rel. Crenshaw et al. v. Joseph et al., supra.

■ Assuming, without deciding, that there can be a presentation within the meaning of § 125 of the Constitution where it is made to appear that there was a purposeful and deliberate evasion by the Governor or those authorized by him to receive bills from the Legislature, we are in accord with the conclusion reached by the trial court that there was no such evasion shown in this case.

There is absolutely no evidence tending to show that the Governor himself sought to evade presentation or that he gave any instructions to his recording secretary, or any other person authorized to receive bills from the Legislature, to evade such presentation.

The Governor's office was closed at 4:30 p.m. on August 26, 1949. This was in accord with the proclamation issued by the Governor many months before the attempted presentation with which we are here involved. The evidence amply supports the finding that it had been the practice to close the Governor's office at 4:30 p.m., irrespective of the fact that the Legislature was in session, ever since the proclamation was issued, and bills were not received after that time unless notice was given to those persons in the Governor's office who were authorized to receive bills from the Legislature that a bill or bills would be brought to the Governor's office after 4:30 p.m. No such notice was given as to Senate Bill 172.

There was much evidence introduced as to what had been the custom of preceding administrations. The evidence offered on behalf of the plaintiffs was to the effect that prior to the administration of the present Governor, someone had always been in the office of the Governor to receive bills from the Legislature while it was in session, irrespective of the hour. There was some evidence offered by the defendant to the opposite effect. However, the view which we take of this case does not require an expression by us on the weight of the testimony in this connection, for the present Governor is not required to conduct his office in accord with the manner in which his predecessors may have conducted it. The hour fixed for the closing of the Governor's office was reasonable and was not in contradiction of any constitutional or statutory provision.

Senate Bill 172 was not taken to the Governor's office until five o'clock p.m., approximately thirty minutes after the Governor's office had been closed and after those persons in his office shown to have the authority to receive bills had left for their homes without any knowledge of the fact that there would be an effort on the part of the Legislature to make presentation of a bill to the Governor.

We cannot say from the evidence presented in this case that the attempt made to deliver the bill to the Governor's office at five o'clock, under the circumstances above delineated, could be held to be a constructive presentation of Senate Bill 172.

■ The trial court refused to permit the plaintiffs to show that the Governor's executive secretary was in the executive offices at about six o'clock p.m. on August 26, 1949, and refused to open the doors, although loudly requested to do so by those seeking to gain admittance for the purpose of presenting the said Senate Bill 172 to the executive secretary. There was no error in this ruling. Cooperation between the executive and legislative branches of the government is much to be desired, but there was no legal obligation on the part of the Governor or his staff to open the executive offices after the time fixed for closing. Moreover, it does not appear that the executive secretary was authorized to receive bills from the Legislature.

■ Appellants next insist that the presentation of the bill to the executive secretary of the Governor on the floor of the Senate and his refusal to accept it con-

stituted a presentation within the meaning of § 125 of the Constitution. We cannot agree. In the first place, there is nothing in the evidence to show that the executive secretary was authorized to receive bills from the Legislature. It affirmatively appears from the evidence that he had received no bill during the 1947 session of the Legislature, when he served the Governor as executive secretary, nor during that portion of the 1949 session that he served in that capacity. We also are unwilling to hold that the Governor or anyone authorized by him to receive bills must accept such presentation on the floor of the Senate.

We come next to consider the contention asserted by appellants to the effect that the said Senate Bill was not returned to the Senate within the time prescribed by § 125 of the Constitution after its presentation on August 29, 1949.

As heretofore shown, the journals affirmatively show an actual presentation on August 29, 1949. The sixth calendar day after August 29, 1949, excluding Sunday, was not a legislative day. Hence, the Governor could not have returned the bill to the Senate on that day. September 9, 1949, was the first legislative day thereafter. Senate Bill 172, according to the Senate Journal, reached the Secretary of the Senate at 11:48 p.m. on that night, one minute after a motion to adjourn sine die had been made. The Senate adjourned sine die at 11:59 p.m., the vote to adjourn being had on the motion made at 11:47. Appellants argue that Senate Bill 172 reached the Senate too late for that body and the House of Representatives to give consideration to the Governor's veto, and hence there was no return within the meaning of § 125 of the Constitution.

Appellee argues that this position taken by appellants is unsound for two reasons, which we will treat in inverse order from that in which they are argued in brief.

■ It is insisted that it was not necessary for the Governor, in order to perfect a constitutional veto, to return the bill on September 9, 1949, at all, for the reason that the Senate was in recess when the six-day period after presentation expired, and that in such instances § 125 of the Constitution, as construed by this court, gives to the Governor not one, but two legislative days within which to make return after the Senate reconvenes. In State ex rel. Crenshaw et al. v. Joseph et al., supra, § 125 of the Constitution was construed as giving to the Governor two legislative days in which to return a bill to the originating body where that body is in recess on the sixth calendar day after presentation. But we do not think that § 125 of the Constitution is subject to that construction when the first legislative day after such a recess is the last day on which the Legislature can meet under the Constitution. Hence, where the Governor is unable to return a bill on the sixth calendar day after presentation because the originating body is not in session on that day, he must return it on the next legislative day thereafter if it is the last day on which the Legislature can meet under the Constitution. There is no second legislative day on which he can make a return. Any other construction would give to the Governor the power to pocket veto a bill presented to him more than five days prior to final adjournment, which is clearly contrary to the express language of said § 125.

■ However, we agree with the other insistence of appellee to the effect that the return of the bill to the Senate at 11:48 p.m. on September 9, 1949, while it was in session, was a sufficient return. Under § 125 the Governor could return the bill to the Senate any time on September 9, 1949, while that body was in session. He did so. True, the return was but a few minutes before the expiration of the last legislative day. The Constitution, § 125 draws the line. We cannot say that it is incumbent upon the Governor to make his return at any particular time during the last legislative day in order that the Legislature may consider his veto. We have no way of knowing how much time would be needed for such action. Undoubtedly more time would be needed for action on some bills than on others. The conclusion reached on this question finds support in our holding in State ex rel. Crenshaw et al. v. Joseph et el., supra, and in our opinion expressed in

In re Opinion of the Justices, supra, to the effect that the Governor does not have six full days in which to return the bill if the originating body is in session on the sixth day and adjourns before return can be made.

We are in accord with the conclusion reached by the trial court that Senate Bill 172 never did become a law.

The judgment is affirmed.

Affirmed.

FOSTER, LIVINGSTON, SIMPSON, and STAKELY, JJ., concur.

BROWN, J., not sitting.