To the Members of the Senate State Capitol
Montgomery, Alabama 36130
Gentlemen:
We are in receipt of Senate Resolution No. 236, requesting an advisory opinion of the Supreme Court and posing the following question:
“Have Senate Bill 4 and House Bill 161 been delivered to the Governor in accordance with the requirements of Section 125 of the Constitution, thereby starting the period of time during which the Governor has the right to consider a bill without its becoming a law independently of his signature?”
Section 125 of the Constitution states in pertinent part:
“Every bill which shall have passed both houses of the legislature, except as otherwise provided in this Constitution, shall be presented to the governor; if he approves, he shall sign it; but if not, he shall return it with his objections to the house in which it originated, which shall enter the objections at large upon the journal and proceed to reconsider it. ... If any bill shall not be returned by the *280 governor within six days, Sunday excepted, after it shall have been presented, the same shall become a law in like manner as if he had signed it, unless the legislature, by its adjournment, prevent the return, in which case it shall not be a law; but when return is prevented by recess, such bill must be returned to the house in which it originated within two days after the reassembling, otherwise it shall become a law, but bills presented to the governor within five days before the final adjournment of the legislature may be approved by the governor at any time within ten days after such adjournment, and if approved and deposited with the secretary of state within that time shall become law.”
In determining the circumstances relating to the presentment of Senate Bill 4 and House Bill 161, we are limited to the facts as revealed by the Senate journal. It shows that Senate Bill 4 and House Bill 161 received the approval of both houses of the legislature and were signed by the presiding officers of both houses on Thursday, April-8, 1982.
The journal also contains a communication from the enrolling and engrossing clerk of the Senate which states:
“At 11:45 A.M., on Thursday, April 8,1 attempted to deliver Senate Bills 28, 307, 356, 397, 454, 482, 493, and Senate Joint Resolutions 179, 195, 198, 211, 216, and 223 to the Governor’s Recording Secretary in the basement office. I was accompanied by Angie Stevenson, photographer. The door to the office was locked, the blinds drawn, and the lights were out. At 12:00 Noon, accompanied by Senator Earl Goodwin, we attempted to deliver same to the Governor’s Office on the first floor. The same conditions prevailed. At 12:01 P.M. the Senator and I attempted to deliver same to the Recording Secretary in the basement and encountered the same conditions.
“At 3:15 P.M., accompanied by Senator McDonald, Senator Gulledge, Representative Manley and members of the news media, we attempted to deliver Senate Bill 4 to every door to the Governor’s Offices on the first floor and the basement. The same conditions prevailed.
“Ann S. Worthington
“Enrolling and Engrossing
“Clerk
“Senate of Alabama
“The foregoing communication was read and ordered spread upon the Journal.”
The journal entry, by universal rule, must be accepted by this Court, which has no authority to go beyond the legislative journals. Cammack v. Harris, 234 Ky. 846, 29 S.W.2d 567 (1930).
However, we can take judicial notice that Thursday, April 8, 1982, was not a state holiday and had not been proclaimed such by the Governor. Also, we note that the times mentioned by the enrolling and engrossing clerk were all within the normal business hours of the state.
Your inquiry, therefore, is whether the bona fide effort by a duly authorized clerk of the Senate to present a bill at the office of the Governor, during regular business hours, constitutes a presentation within the meaning of § 125, even if the effort fails because the doors are closed and locked.*
In 1950, in Building Commission v. Jordan, 254 Ala. 433, 48 So.2d 565 (1950), the Supreme Court was faced with a situation where a duly authorized clerk tried to deliver a bill after the Governor’s office had closed for the day. While the Court determined that the Governor had not deliberately evaded the receipt of the bill, the Court by implication did indicate that deliberate acts on the part of the Governor, or those authorized by him to receive bills from the legislature, to avoid presentation would constitute constructive presentation *281 within the meaning of § 125 of the Constitution if a bona fide effort was made to actually deliver a bill.
This reasoning is consistent with the earlier decision of State, ex rel. Crenshaw v. Joseph, 175 Ala. 579, 57 So. 942 (1911), at page 588, in which the Court, in examining the Louisiana case of State, ex rel. State Pharmaceutical Association v. Michel, 52 La.Ann. 936, 27 So. 565 (1900), noted with approval the holding of the Louisiana Supreme Court to the effect that a valid presentation was effected where an authorized clerk attempted to deliver the bill, but the Governor refused to accept it.
Whether the Governor actually refused to accept a bill or whether the closing of his office was a deliberate attempt of evasion is immaterial here. The Senate journal entry establishes without contradiction that an actual, physical presentment of the bill was impossible because, for whatever reasons, the Governor was not present, his office was closed, and no one with authority to receive bills in his behalf was found.
Although nothing in the Constitution prevents the Governor from fixing his office hours as he wishes, he cannot thereby thwart the constitutional process by which legislation becomes law. “Presentment” to the Governor of bills is a constitutional requirement in this process and, because it is, an important constitutional issue is presented by the request for our advisory opinion. Under the circumstances reflected by the Senate journal, we hold that the Senate’s attempt was a presentment in a constitutional sense, and the fact that the offices were closed did not render ineffective this presentment.
To hold otherwise would give the Governor the power to control the presentment of bills to him, thereby undermining the intent of that portion of § 125 of the Constitution, which reads:
“If any bill shall not be returned by the governor within six days, Sunday excepted, after it shall have been presented, the same shall become a law in like manner as if he had signed it, unless the legislature, by its adjournment, prevent the return, in which case it shall not be a law....”
This sentence mandates that the Governor must act, in the use of his veto power, not within six days of his actual reception of a bill, but within six days of its presentment to him. If it were the former, the Governor might wait until within six days of the adjournment of the legislature to receive the bill, thereby preventing its return due to the adjournment and, thus, defeating its becoming a law, or return it with a veto message just prior to adjournment, thereby preventing action on the veto by the two houses. Either of these actions would effectively prevent the legislature’s having the final action on the bill as was intended by the Constitution.
For the presentment to be fulfilled, i.e., the formal offer or tender of the bill to the Governor, there is no requirement that he actually receive it. From that moment of formal tender, the clock begins to run and he must act, if he intends to veto, within the prescribed six days.
Your inquiry, as restated, is answered in the affirmative.
Respectfully submitted,
C. C. TORBERT, JR. Chief Justice
HUGH MADDOX
RENEAU P. ALMON
JANIE L. SHORES
T. ERIC EMBRY
SAM A. BEATTY
Justices

 The Senate journal entry set out above makes reference to Senate Bill 4 as having been sent to the Governor’s office; it makes no reference to House Bill 161. Therefore, we could answer the particular inquiry only as to Senate Bill 4. However, our restatement of the question will allow an answer which can be applied in the case of either bill.