[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1239 
Plaintiffs appeal from the trial court's entry of summary judgment for defendants in a suit challenging the constitutionality and the validity of the enactment of Act No. 84-408, 1984 Alabama Acts, p. 955.[1]
Act No. 84-408 allows municipalities having a population of 7,000 or more to change their status regarding the sale of alcoholic beverages from dry to wet or wet to dry by a municipal option election. Furthermore, under the statute if a municipality having a population of 7,000 or more located in a dry county votes to allow the sale of alcoholic beverages within its corporate limits, then every municipality having a population of 4,000 or more located in the same county may hold a similar election.
The journals of the senate and house of representatives indicate that the bill was properly passed and presented to the governor for his signature on May 10, 1984, the 29th legislative day. The senate journal also indicates that the senate adjourned sine die on May 21, 1984, the 30th legislative day, without receiving the return of the bill with the governor's veto message.
Pursuant to Act No. 84-408, the City of Guntersville scheduled a wet/dry referendum for July 10, 1984. Plaintiffs, two groups of concerned citizens and a member of the house of representatives, filed a petition on June 25, 1984, seeking to enjoin the city from holding the referendum and asking the court to declare Act No. 84-408 unconstitutional. Plaintiffs later withdrew their petition for a preliminary injunction retaining their constitutional challenge, and the city voted in favor of the sale of alcoholic beverages. After a hearing, the trial court granted defendants' motion for summary judgment on plaintiffs' challenges to the validity of the statute.
Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Rule 56 (c), A.R.Civ.P. If the material facts are not in dispute, a question of law is presented to be decided by the trial court. Kitchensv. Winn-Dixie Montgomery, Inc., 456 So.2d 45, 47 (Ala. 1984). However, if there is a disputed material fact, even a scintilla of evidence supporting the non-moving party will preclude summary judgment. White v. White, 431 So.2d 1208, 1209 (Ala. 1983).
On appeal, plaintiffs argue that the trial court erred in granting summary judgment on several issues. First, plaintiffs claim that Act No. 84-408 was improperly enacted into law. They presented evidence that three members of the house of representatives, who were shown by the journal as voting in favor of the bill, were not present and did not vote. Plaintiffs argue that other members of the house of representatives voted more than once, in violation of the rules of the house of representatives, and that this action resulted in the bill's passing by one vote. Plaintiffs allege that *Page 1240 
allowing some legislators to vote more than once dilutes the representation of the constituents of the other legislators and denies these citizens equal protection of the law.
The journal of the house of representatives indicates that the bill was properly passed. We have no authority to go beyond the legislative journals and look at extrinsic evidence attacking the regularity of the bill's enactment. Opinion ofthe Justices, 412 So.2d 279 (Ala. 1982). In Robertson v. State,130 Ala. 164, 169, 30 So. 494, 495-96 (1901), the rule was stated as follows:
 "The decisions of this court have settled this proposition: That in determining whether a bill enrolled, and signed by the president of the senate and the speaker of the house of representatives, and approved by the governor, was in fact regularly and constitutionally enacted in all its provisions, and contains all the provisions which were enacted by the general assembly, recourse can be had only to the bill itself as so enrolled, signed, and approved, and to the journals of the two houses of the assembly. The bill itself, wrought by such enrollment, signatures, and approval into an apparently valid enactment of the legislative department of the government, is a record of its own existence and integrity — in many jurisdictions constituting the only record to be looked to — and carries with it a presumption that it is the bill which the two houses concurred in passing; and this presumption can only be overcome by the contrary being made to affirmatively appear from that other record, the journals — the bound volumes of the proceedings transcribed, and signed by the presiding officers, and deposited with and kept by the secretary of state — of the respective houses of the general assembly. . . ."
Since we cannot consider the extrinsic evidence presented by plaintiffs regarding the voting of legislators on the floor of the house of representatives, there is no genuine issue of material fact in dispute. Defendants were entitled to summary judgment on this issue.
Furthermore, we are not persuaded by plaintiffs' argument that our refusal to enforce rules of the house of representatives is unconstitutional under the principle ofBaker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663
(1962). In Baker, the United States Supreme Court held that a complaint alleging denial of equal protection based on the failure of the Tennessee legislature to reapportion itself to reflect population changes presented a justiciable constitutional cause of action. The question in the case before us is not whether the citizens of each legislative district are entitled to representation in the legislature proportionate to the population of the district, but whether they are entitled to such representation on each vote taken in the legislature. If we held affirmatively, then every act passed when some senators or representatives were allegedly absent could be challenged on the ground that the constituents of those absent legislators were denied equal representation on that issue. We will not do so, because the effect of such a holding would be to intrude on the inner workings of the legislature.
Plaintiffs also urge that the statute was improperly enacted because the senate's adjournment sine die without the consent of the house of representatives prevented the return of the bill with the governor's veto message.
First, we reject plaintiff's contention that the senate adjourned without the consent of the house of representatives. Art. IV, § 58, of the Alabama Constitution provides:
 "Neither house shall, without consent of the other, adjourn for more than three days, nor to any other place than that in which they may be sitting except as otherwise provided in this Constitution."
This provision applies to adjournment sine die. Opinion of theJustices, 254 Ala. 179, 180, 47 So.2d 642, 643 (1950). However, the provision requires only that each house consent to the adjournment; no particular method of manifestation of such consent is *Page 1241 
required. Opinion of the Justices, 288 Ala. 89, 91,257 So.2d 336, 338 (1972). Where both houses adopt similar resolutions to adjourn on the same day, there is consent to the adjournment even in the absence of a joint resolution. Id. In the present case, both houses passed resolutions on May 21, 1984, to adjourn sine die. Each house is deemed to have consented to the other's adjournment.
Art. V, § 125, of the Alabama Constitution provides in part:
 "Every bill which shall have passed both houses of the legislature, except as otherwise provided in this Constitution, shall be presented to the governor; if he approve, he shall sign it; but if not, he shall return it with his objections to the house in which it originated, which shall enter the objections at large upon the journal and proceed to reconsider it. . . . If any bill shall not be returned by the governor within six days, Sunday excepted, after it shall have been presented, the same shall become a law in like manner as if he had signed it, unless the legislature, by its adjournment, prevent the return, in which case it shall not be a law; but when return is prevented by recess, such bill must be returned to the house in which it originated within two days after the reassembling, otherwise it shall become a law, but bills presented to the governor within five days before the final adjournment of the legislature may be approved by the governor at any time within ten days after such adjournment, and if approved and deposited with the secretary of state within that time shall become law. . . ." (Emphasis added.)
Plaintiffs claim that the senate prevented the return of the bill by its early adjournment on May 21.
The adjournment contemplated in the emphasized portion of the above quotation is a final adjournment. Opinion of theJustices, 252 Ala. 541, 542, 42 So.2d 27, 29 (1949). The governor has six calendar days, excluding Sunday and the day on which the bill is presented to him, to return the bill.Building Commission v. Jordan, 254 Ala. 433, 437, 48 So.2d 565,569 (1950). If the house in which the bill originated is in recess on the sixth calendar day, the governor has the next two legislative days in which to return the bill. Id. However, if the next legislative day following the recess is the final day on which the legislature can constitutionally meet, the bill must be returned on that day; in such a case there can be no second legislative day following the recess. 254 Ala. at 441,48 So.2d at 573. Moreover, if the house in which the bill originated is in session on the day on which the return must be made, an early adjournment on that day does not excuse the governor's failure to return the bill while the house is in session. Opinion of the Justices, 252 Ala. at 543,42 So.2d at 29.
The senate journal shows that Senate Bill 76 was presented to the governor on the 29th legislative day, Thursday, May 10, 1984, at 9:05 p.m. Since the legislature was in recess on Thursday, May 17, the sixth calendar day after presentment, not including Sunday or the day of presentment, and the legislature is constitutionally limited to 30 legislative days, Alabama Constitution, Amendment 339, the governor's return of the bill had to be made on the 30th legislative day, Monday, May 21, before adjournment. The senate journal contains no entry of a return or attempted return of Senate Bill 76 on that day. As a matter of law, the adjournment of the Senate at 5:45 p.m. on May 21 was not improper and did not prevent the return of the bill within the meaning of Alabama Constitution, art. V, § 125.
Plaintiffs point to an affidavit indicating that the governor's veto message reached the senate during the vote on the motion for adjournment. In Building Commission v. Jordan, we held that a return of a bill was timely where the return occurred one minute after the motion to adjourn had been made but prior to actual adjournment. 254 Ala. at 441,48 So.2d at 572-73. In Jordan, however, those facts appeared in the senate journal. In the present case, there is no indication in *Page 1242 
the journal of an attempted return, and we cannot go behind the journal to attack the proceedings of the legislature.
The third challenge of plaintiff to Act No. 84-408 is that the statute is vague for failing to designate a method for determining the population of cities. Plaintiffs maintain that the 1970 federal decennial census controls because that is the one referred to by the legislature in Code of 1975, § 11-40-12, which sets forth eight classes of municipalities. According to the 1970 census, the population of Guntersville is 6,491, less than the 7,000 needed to have a municipal option election under Act No. 84-408. Plaintiffs contend that if the legislature wanted the population to be measured by a different census, it was required to so designate.
Defendants argue that the statute is not vague and that the population of Guntersville was properly determined to be 7,041 people, as listed in the 1980 federal decennial census.
Amendment 375 to the Alabama Constitution allows the legislature to enact a schedule of classes of municipalities "according to any designated federal decennial census." Pursuant to this provision, the legislature enacted Code of 1975, § 11-40-12, based on the 1970 census. Section 11-40-12
(b) provides: "The legislature may refer, in the title thereof, to the class or classes of municipalities herein set out, in adopting general laws." In drafting Act No. 84-408, the legislature did not refer to any class of municipalities under § 11-40-12 or to any census.
In the absence of any such designation, we will not assume that the legislature in 1984 intended to refer to the 1970 census. Neither do we conclude that the statute is vague. Section 11-40-6 of Code of 1975, which sets forth the test for determining whether a municipal corporation should be called a city or town, states: "The last census, whether federal or taken as authorized in this title, shall be used in determining the population of a city or town." Furthermore, Act No. 84-408 has been codified in Chapter 2A of Title 28 of the Code. Another chapter of the same title defines "population" as "[t]he population according to the last preceding or any subsequent decennial census of the United States." Code of 1975, § 28-3A-2 (21).
We conclude that in the absence of a designation to the contrary the population of cities for the purposes of Act No. 84-408 is determined by the last preceding federal decennial census.
Plaintiffs' next challenge to the statute is that it is a local law, notice of which was not published as required by Alabama Constitution, Amendment 341.
Amendment 397 to the Constitution, which superseded Amendment 375 and amended art. IV, § 110, provides the following definition of a "general law":
 "A general law is a law which in its terms and effect applies either to the whole state, or to one or more municipalities of the state less than the whole in a class. A general law applicable to such a class of municipalities shall define the class on the basis of criteria reasonably related to the purpose of the law, provided that the legislature may also enact and change from time to time a general schedule of not more than eight classes of municipalities based on population according to any designated federal decennial census, and general laws for any purpose may thereafter be enacted for any such class. . . ."
In Opinion of the Justices, 373 So.2d 1051, 1053 (Ala. 1979), the identical language of Amendment 375 was interpreted as follows:
 "Under § 110 as amended, general laws now appear to be defined in at least three categories: a law which in its terms and effect applies either (1) to the whole state, or (2) to one or more municipalities of the state less than a whole in a class where the classes are defined on the basis of criteria reasonably related to the purpose of the law, or (3) to one or more municipalities of the state less than the whole in a class based upon a general *Page 1243 
schedule of not more than eight classes of municipalities based on population."
We have already determined that subsection (3) is inapplicable because the legislature did not refer to the schedule of municipalities. With regard to subsection (2), however, the legislature did state its intent in defining the class of municipalities to which the statute applies:
 "It is hereby declared the intention and the purpose of this chapter to permit an election by the citizens of certain municipalities to determine the wet or dry status of such municipalities with regard to the sale, distribution and consumption of alcoholic beverages within the corporate limits of such municipalities; and further that such election shall be provided only in those municipalities which can provide safeguards for the protection of the public welfare, health, peace and morals of the people. In the furtherance of the protection of the public welfare, health, peace and morals, the legislature has determined that a population classification should be established to provide this method of municipal option election only in those municipalities with a population of 7,000 or more people within a county, it being the judgment of the legislature that municipalities with a lesser population would be unable to support and maintain such protection where such municipality is located in a dry county, whereas a municipality of 7,000 or more population would have the resources and ability to support and maintain such safeguards."
Code of 1975, § 28-2A-3. Unlike Peddycoart v. City ofBirmingham, 354 So.2d 808, 810 (Ala. 1978), we cannot conclude in this case that there is no reasonable relationship between the purpose of the statute and the size of the municipality.See also Couch v. Rodgers, 253 Ala. 533, 45 So.2d 699 (1950). We find that Act No. 84-408 is so framed as to be reasonably susceptible of interpretation as a general law and, therefore, we are bound not to construe it as a local law. See Crosslin v.City of Muscle Shoals, 436 So.2d 862, 863 (Ala. 1983).
Finally, plaintiffs argue that the provision of Act No. 84-408 allowing municipalities with a population of 4,000 or more located in a dry county to hold a referendum when a municipality with a population of 7,000 or more in the same county votes to allow the sale of alcoholic beverages is contradictory to the expression of legislative intent that municipalities with a population under 7,000 could not provide adequate protection of the public welfare. We decline to address this argument since, under the facts of this case heretofore explained, the provision of the statute involving municipalities of 4,000 people is not at issue.
The questions presented by this case were issues of law to be decided by the court. Let the summary judgment in favor of the defendants be affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON and HOUSTON, JJ., concur.
[1] Act No. 84-408 was introduced as Senate Bill 76 and is now codified at Code of 1975, §§ 28-2A-1, -2, -3, and -4, and28-4-5.