MURDOCK, Justice
(dissenting).
I respectfully must dissent. I am concerned that the main opinion supplies a rule for determining the population of municipalities that is not present in § 11-40-10(a), Ala.Code 1975, the statute actually at issue in this case. Further, I am concerned that it arrives at this result through a misapplication of the “plain meaning” and the in pari materia rules of statutory construction.
The main opinion agrees with the trial court’s premise that
“a municipality’s police jurisdiction expands to the area within three miles of its city limits pursuant to § ll-40-10(a) only when a decennial census conducted by the United States Census Bureau or a municipal census conducted pursuant to § 11-47-90 et seq., Ala.Code 1975, establishes that the population of that municipality exceeds 6,000 inhabitants.”
202 So.3d at 649-50. The statute the main opinion discusses, however, is not § 11-40-10(a)—the statute that defines the territorial extent of police jurisdictions for municipalities depending upon the populations of those municipalities—but rather § 11-40-6, Ala.Code 1975, a statute that classifies a municipality as a city or a town based on population for purposes entirely unrelated to the police jurisdiction.
The main opinion is correct that § 11-40-6 states that “[t]he last census, whether federal or taken as authorized in this title, shall be used in determining the population of a city or town.” Consequently, if we were being asked to interpret § 11-40-6, we would rightly conclude that “the language of the statute is unambiguous” and that there are only two ways to determine the population of a municipality for the purpose of designating it as either a city or a town. IMED Corp. v. Systems Eng’g Assocs., 602 So.2d 344, 346 (Ala.1992).
But the dispute in this case does not concern whether a municipality should be designated as a city or town; it is about the territorial extent of Pike Road’s police jurisdiction. That issue is plainly the subject of § ll-40-10(a), not § 11-40-6. As the main opinion is forced to admit, however, “§ 11-40-10 is silent with regard to the issue now before the Court.” 202 So.3d at 650 (emphasis added).
Even if it is assumed that the language of § 11-40-6, and in particular its last sentence, is relevant to the issue in this case, the main opinion attributes much more to that sentence than it can support. *663 The main opinion rejects Pike Road’s-argument that the last sentence of the first paragraph of § 11-40-6 “should relate only to determining population for purposes of deciding whether a municipality is a city or a town” because, it says, “the clear language of the statute is not so limiting.” 202 So.3d at 651. It notes that the sentence in question, standing alone, does, not expressly state, as Pike Road urges, that “ ‘[t]he last census, whether federal or taken as authorized in this title, shall be used in determining the population of a city or a town for the purpose of determining whether said munidpdlity is properly classified as a city or a town.’ ” Id. at 651. The main opinion therefore concludes that reading the last sentence in the way' Pike Road advocates would require us to “modify” § 11-40-6 in a manner contrary to legislative intent. Id. at 651.
But meaning, plain or otherwise, cannot be ascertained in the absence of context. The main opinion acknowledges the axiom repeated in IMED Corp., 602 So.2d at 346, that “[t]he fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute.” This Court also has observed that, “[i]n determining the intent of the legislature, we must examine the statute as a whole.” Ex parte Exxon Mobil Corp., 926 So.2d 303, 309 (Ala.2005). The last sentence of the first paragraph of §- 11-40-6—“[t]he last census, whether federal or taken as authorized in this title, shall be used in determining the population of a city or town”—cannot be read outside the context of the first two sentences of the same paragraph, which state: “Municipal corporations now existing or hereafter organized under this title containing 2,000 or more inhabitants shall be called cities. All incorporated municipalities containing less than 2,000 inhabitants shall be called towns.” Viewed in the context of those first two sentences, the last-sentence of the first paragraph of § 11-40-6 clearly refers to how a municipality’s population must be determined for the purpose of designating whether a municipality is a city or town. This is why the sentence ends with the phrase “determining the population of a city or town” rather than “determining the population of a municipality.”
Still more contextual confirmation of this meaning is found in the second paragraph of § 11-40-6, which states:
“At the next election more than four months after the one hundred twentieth day after the first day of the first regular business session of the Legislature held next after the publication by the federal government of the regular federal decennial population census for Alabama, if the municipality shows a population which authorizes a change in its government under this title, the proper officers for such a city shall be elected and perform the duties prescribed in this title.”
(Emphasis added.) The second paragraph (which does not even mention the alternative of a census performed by a municipality) reinforces that the focus of § 11-40-6 is whether a municipality is to be considered a city or a town for purposes of its form of government.
In short, the purpose of § 11-40-6 is to establish the difference between cities and towns, and thus the appropriate form of government, by setting a population threshold. In that context, the purpose of the last sentence of the first paragraph of § 11-40-6 in particular is to state the methods by which population may be ascertained for the purpose of determining whether -a municipality is to be designated as a city or a town. The “plain language” of § 11-40-6 certainly does not dictate that the purpose of the last sentence of its *664 first paragraph is, as the main opinion claims, to set “the default rule” that “applies to all other statutes requiring the determination of a municipality’s population in the absence of a more specific directive.” 202 So.3d at 653.
The main opinion correctly observes that “ ‘statutes covering the same or similar subject matter should be construed in pari materia.’ ” 202 So.3d at 651 (quoting Ex parte Johnson, 474 So.2d 715, 717 (Ala. 1985)). The main opinion reasons that the subject matter of § 11-40-6 is sufficiently related to the subject matter of § 11-40-10 such that the statutes should be read in pari materia.
“Statutes are in pari materia—pertain to the same subject matter—-when they ,., have the same purpose or object.” 2B Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Constmction § 51:3 (7th ed.2012). Sections 11-40-6 and 11-40-10 deal with similar subject matters only in the broad sense that they both discuss municipalities and them populations. They do not, however, have the same purpose. As noted above, § 11-40-6 concerns whether, based on its population, a municipality is considered a city or a town (and therefore whether it is to be governed as a city or as a town); § 11-40-10, on the other hand, concerns the territorial extent of a municipality’s police jurisdiction, regardless of its designation as a city or a town (or its government as such). Indeed, under § 11-40-10 it is possible for one .municipality designated as a city to have a police jurisdiction that extends only a mile and a half beyond its corporate limits while another municipality designated as a city could have a police jurisdiction that extends three miles beyond its corporate limits. The fact that the municipal designations provided in § 11-40-6 do not affect the territorial extent of the police jurisdictions of municipalities delineated in § 11-40-10 illustrates that the two statutes have different objects. . .
Another fact highlighted by Pike Road also demonstrates why the in pari materia principle should not be applied to these statutes. Pike Road observes that there are
“multiple classification statutes in the Alabama Code that tie the population of a municipality solely to the federal decennial census, see, e.g., §§ 11-40-14, 11-43-2, 11-43-7.1, 11-43-190, 11-48-30, and 11-51-128, Ala.Code 1975, as well as multiple other classification statutes like § 11-40-10 in which no specific method for determining a municipality’s population is set forth, see, e.g., §§ 11-32-1,11-40-23,11-42-58, and 11-43-5.1, Ala.Code 1975....”
202 So.3d at 651. Given that so much variation exists in the Alabama Code as to how a municipality’s population should be ascertained for various purposes, why is § 11-40-6 the one statute that must be read in pari materia with all the statutes that contain no specific method of determining a municipality’s population to supply “the default rule”?
The main opinion’s answer apparently is that the last sentence of the first paragraph of § 11-40-6 contains no specific limitation on the rule stated therein, but, as already observed, this answer ignores the fact that we must read that sentence in the context of the statute in which it appears. It seems at least as plausible to conclude that the fact that the legislature has designated specific ways to determine municipal populations in so many statutes but has chosen not to designate a specific method in other statutes indicates that, for the purposes of those other statutes, the legislature simply did not intend to prescribe or limit' the ways by which a municipality’s population could be determined. In other words, we should take the stat *665 utes as they are, instead of reading into them a “default rule” that we pluck from a single statute that has its own specific, stated purpose. For that matter, if the legislature intended there to be a rule of general application for the determination of municipal populations, it easily could have enacted a general statute to that end, rather than leaving it for this Court to comb through other statutes in an effort to discover the existence of such a rule.[21]
The main opinion cites City of Bridgeport v. Citizens Action Committee, 571 So.2d 1089 (Ala.1990), in support of its conclusion. In' City of Bridgeport, some citizens brought an action to enjoin the City of Bridgeport (“Bridgeport”) from holding a referendum scheduled to occur on June 5,1990, to become a “wet” county as authorized by § 28-2A-1 et seq., Ala. Code 1975. The citizens contended that Bridgeport did not have a sufficient population to be permitted to hold a wet-dry referendum. Under § 28-2A-4, Bridgeport had to have a population of at least 4,000 citizens to hold a wet-dry referendum, but that statute did not specify how the municipality’s population was to be determined.
The most recent federal decennial census—1980—determined Bridgeport’s population to be 2,974. Bridgeport had increased its population between 1980 and 1990, however, through four separate annexations. Following the annexations, Bridgeport “attempted to authorize a special census, pursuant to § 11-47-90, to determine whether it had become large enough to conduct a wet-dry referendum,” 571 So.2d at 1090. Following a hearing, the trial court concluded that Bridgeport had not established that it had the requisite population to hold the referendum, and it issued, an injunction preventing it from holding the referendum.
On appeal, Bridgeport contended that
“the language of § 28-2A-4 is ambiguous in regard to how a municipality is to determine its population and that it is the function of this Court to clarify the *666 legislative intent pertaining to this statute. More specifically, the City of Bridgeport claims the trial court erred in holding it to the strict requirements of § 11-47-90, which governs the term ‘census,’ and further claims that a ‘municipality has common law authority to conduct a population count by “means properly serviceable to that end,” ’ citing as authority for this proposition Ryan v. City of Tuscaloosa, 155 Ala. 479, 46 So. 638 (1908).”
571 So.2d at 1091. Conversely, the citizens contended that “when a municipality conducts a census to determine its population count for the purpose of a wet-dry referendum, such a census must fully comply with the requirements set forth in §§ 28-2A-1 through -4 and §§ 11-47-90 through-95.” Id.
This Court agreed with the citizens, stating:
“There is no provision in §§ 28-2A-1 through -4 for how population is to be determined for purposes of an election. However, this Court has stated that § 28-2A-1 does not require that only a decennial census conducted by the United States Department of Commerce, Bureau of the Census, be used to determine the population of a municipality. Dennis v. Pendley, 518 So.2d 688, 690 (Ala.1987). The Alabama Code recognizes two methods for determining the population of a municipality. Sections 11-47-90 and -91 authorize a municipality to conduct its own census and provide strict guidelines to ensure the integrity of the census....

(t

“The record indicates that the City of Bridgeport failed to comply with these statutory guidelines. There is no evidence of record that the appointed enumerator, John Lewis, was ever confirmed by the city council. The record also reveals that the college students that assisted Lewis with the census were employed by him and were not appointed or confirmed by the mayor. In addition, there is no evidence of record to indicate that the students took the oath required of enumerators. The individual who conducted the actual count or tally of the census papers, Inda Galo-vich, also was not appointed or confirmed as a census enumerator. The final results of the census were never certified under seal nor filed with the Alabama Secretary of State. Clearly, the City of Bridgeport has failed to comply with the statutes governing the census-taking process.”
571 So.2d at 1091-92.
The main opinion focuses on the statement in City of Bridgeport that “[t]he Alabama Code recognizes two methods for determining the population of a municipality.” 571 So,2d at 1091. If the Bridgeport Court was attempting to state a “default rule” that there are only two ways for a municipality to determine population for any given statutory end, the Court’s failure to mention or even cite § 11-40-6 in support of that conclusion is inconsistent with the main opinion’s confidence in the present case in the general applicability of the last sentence of the first paragraph of § 11-40-6. Further, the main opinion, I submit, ignores the context of the case. The essential holding of City of Bridgeport is that if a municipality wishes to conduct its own census, it must do so in compliance with the requirements prescribed for a municipal self-census in § 11^7-90 and § 11-47-91. Bridgeport could not prove such compliance and therefore lost the case.[22]
*667 The main opinion overlooks an enlightening case cited by the Bridgeport Court, Dennis v. Pendley, 518 So.2d 688 (Ala. 1987). Dennis involved the City of Clan-ton’s attempt to hold a wet-dry referendum on November 4, 1986. The attempt was challenged, in part, on the basis that Clanton had not proved that it had the requisite population of 7,000 inhabitants for eligibility to hold such a referendum. The trial court enjoined Clanton from holding the referendum.
This Court reversed the judgment of the trial court. In doing so, the Dennis Court first turned aside the appellee’s citation of a case that appeared to set a default rule for determining a municipality’s population because, as with City of Bridgeport, the context of the Court’s statement had to be kept in mind. The Dennis Court explained:
“Appellee Pendley argues that, based on the authority of Alabama Citizens Action Program v. Kennamer, 479 So.2d 1237 (Ala.1985), only a preceding decennial census may be used to determine population for purposes of § 28-2A-1. We disagree. ' Kennamer’s statement that ‘[i]n the absence of a designation to the contrary the population of cities for the purposes of Act No. 84-408 is determined by the last preceding federal decennial census,’ 479 So.2d at 1242, must be read in the context of the facts of that particular case. There, the question was which of two decennial censuses to use, not whether, if available, something other than a decennial census could be reasonably utilized to obtain a valid population count. We find that the interim census conducted by the United States Department of Commerce, Bureau of the Census, which determined Clanton’s- population to be 7,403 as of September 27,1986, does serve just such a function.”
518 So.2d at 690 (emphasis omitted).
The Dennis Court then noted that the purpose behind the population threshold for holding a wet-dry referendum would hot be thwarted by allowing a municipality’s population to be determined more frequently than every 10 years.
“Section 28-2A-1 makes no provision for how population is to be determined. It is the court’s function to make clear the intent of the legislature when some degree of ambiguity is found in a statute. Sutherland Stat. Const., § 45.02 (4th ed.1984). The primary rule of statutory construction is to ascertain and effectuate legislative intent. Alabama v. Tennessee Valley Authority, 467 F.Supp. 791 (N.D.Ala.1979). See also State v. AAA Motor Lines, Inc., 275 Ala. 405, 155 So.2d 509 (1963). In attempting to ascertain the legislative intent, we can turn to § 28-2A-3[,] part of the statute itself. There, it is stated that the purpose of requiring that a municipality have a population of at least 7,000 in order to have a municipal motion election pursuant to § 28-2A-1, is that it is ‘the judgment of the legislature that *668 municipalities with a lesser population would be unable to support and maintain such [necessary] protection [for public welfare, health, peace, and morals of the people].’. This shows, no basis for requiring ten-year gaps between the times that the population may be determined.”
518 So.2d at 690. Similarly, there is no reason to believe that the purposes behind the 6,000-inhabitant population threshold for increasing a municipality’s police jurisdiction would be thwarted by allowing a municipality to establish its population in some way other than the federal decennial census or the municipal-census statutes.
Ultimately—and importantly—the Dennis Court simply relied upon the fact that the legislature had not specified the method that could be used to determine a municipality’s population for purposes of conducting a wet-dry referendum.
“Section 28-2A-1 does not say that only a decennial census can be used to .determine population. We decline to reach such a conclusion in the absence of a clear legislative intent. Clanton has complied with the requirements of § 28-2A-1, and had a population in excess of 7,000 when it held its municipal option election.”
518 So.2d at 690 (emphasis added).
The same reasoning employed by this Court in Dennis was also employed in Ryan v. City of Tuscaloosa, 155 Ala. 479, 46 So. 638 (1908). As the portion of Ryan quoted in the main opinion indicates, 202 So.3d at 653-54, the Ryan Court drew a negative inference from the fact that other provisions of the Alabama Constitution restricted population determinations to the federal census results, but the provision at issue in the case did not. The Ryan Court concluded that, “in omitting mention of [the federal] census in the section under consideration, a clear intent is manifested to leave the ascertainment, upon occasion, of the population to means properly serviceable to that end.” 155 Ala. at 488, 46 So. at 641. There is no reason the same inference should not be drawn as to the legislature’s intent in not specifying a method in § 11-40-10 for determining a municipality’s population.[23]

. The main opinion responds to this criticism with the following argument: “[T]he legislature likewise could have enacted a general stand-alone statute articulating the default rule Justice Murdock advocates—that a municipality might endeavor to prove its population for a particular purpose by any available means unless the legislature has specifically restricted the means available as it relates to that particular purpose—but the legislature has not elected to do so.” 202 So.3d at 652 n. 15, I do not advocate á default rule, however—at least not some special default rule requiring some special legislative enactment as the main opinion suggests.
In a different sense, the fact is that Alabama law does indeed already embrace "the default rule,” if one wants to call it that, attributed to me by the main opinion’s response, i.e.-, that a party to an action may endeavor to prove a relevant fact by "any available means” unless the law specifically prescribes otherwise. By their terms, the Alabama Rules of Evidence (as tempered by constitutional constraints) are expressly applicable in the absence of a specific legislatively prescribed exception or override. As to a given statute or statutory scheme, it is not necessary for the legislature to reiterate expressly that the Alabama Rules of Evidence apply or to expressly negate the absence of any exception to the applicability of those Rules. , The silence of a given statute as to how to prove a fact made relevant by that statute means that any means “available” to that end under the Rules of Evidence is in fact available. In other words, and viewed more generally, the analytical construct asserted by the main opinion essentially would mean that the legislature could never simply remain silent and thereby allow a generally applicable rule to govern in a matter; it would instead have to expressly and specifically speak in every instance to announce that the genéral rule and no other does in fact govern, something already true of general rule's by their nature. See Dennis v. Pendley, 518 So.2d 688 (Ala. 1987), discussed infra; see also Ryan v. City of Tuscaloosa, 155 Ala. 479, 46 So. 638 (1908), also discussed infra.

. The main opinion notes that Bridgeport argued that "a 'municipality has common law *667 authority to conduct a population count by “means properly serviceable to that end,’’ ’ ” but that this Court summarily stated that “we find no merit to this argument.” 571 So.2d at 1091; see 202 So.3d at 659 n. 17. Again, the Bridgeport Court’s statement must be considered in the context of the fact that the City was attempting to rely upon a self-census that did not meet requirements expressly imposed by the legislature in §§ 11-47-90 and 11-47-91 for such a census. It is axiomatic that where the legislature has expressly spoken to a particular issue the common law is displaced. Thus, there was no merit to Bridgeport’s claiming "common law authority” to perform a municipal self-census. In contrast, Pike Road based its municipal population on the United States Census Bureau’s 2013 estimate of the population of Pike Road, not on a self-census that failed to comply with the applicable statutes as Bridgeport attempted to do.

. The main opinion distinguishes Ryan on the basis of the fact that it concerned a provision' of the Alabama Constitution rather than a statute, because the interpretation of a statute is at issue in this case. I see no reason why that distinction should make a difference for applying Ryan’s rationale here. Indeed, the same rationale was applied in Dennis, which did involve the interpretation of a statute. In Ryan, the Court was ascertaining the intent of the drafters of the Alabama Constitution, while in this case we are charged with ascertaining the intent of the legislature in drafting § 11-40-10. But the . legal principle employed in Ryan that the inclusion of a specific requirement in one provision and the omission of that requirement in another similar but more general provision indicates a purposeful intent not to limit the more general provision with the same specific requirement follows, regardless of whether the provision is a part of a constitution or a code. The legislature plainly could have specified in § 11-40-10 exactly how a municipality’s population should be determined, and we know this precisely because of the existence of other statutes that turn on a municipality's population that do contain prescribed methods of determining population. In my view, to ignore this fact turns a blind eye to one of the best clues for divining legislative intent in this case.