RICHARD L. HOLMES, Retired Appellate Judge.
Clifford R. Vaughan and Evelyn S. Vaughan filed suit against Roy E. Eich. In their complaint the Vaughans alleged that Eich had executed and delivered a promissory note payable to the Vaughans and that $13,600, plus interest, was owed to the Vaughans on this note.
*114 Eich filed an answer, wherein he admitted that he had signed the promissory note. However, his answer further stated that he had signed the promissory note in his capacity as president of Bearings and Power Transmission, Inc., and not in his individual capacity.
The case was tried without a jury. Eich and Clifford Vaughan (Vaughan) were the only people testifying at the trial. After hearing the testimony and reviewing the evidence and the trial briefs submitted by the parties, the trial court issued an order, wherein it found in favor of Eich.
The Vaughans appeal. This case is before this court pursuant to Ala.Code 1975, § 12-2-7(6).
The dispositive issue is whether Eich is individually liable on the promissory note payable to the Vaughans.
As noted above, this case was tried without a jury. There is a presumption of correctness accorded the decision of a trial judge sitting without a jury. The trial court’s determination in a case such as the present case will be affirmed on appeal unless there is no credible evidence to support the determination or unless it appears that the determination is plainly wrong or manifestly unjust. City of Bridgeport v. Citizens Action Committee, 571 So.2d 1089 (Ala.1990).
Our review of the record reveals the following pertinent facts: Eich was the president and majority stockholder of Bearings and Power Transmission, Inc. (the corporation). In September 1980 the Vaughans and the corporation entered into a lease for a 5,000 square foot building in Decatur, Alabama. The lease was executed by Eich in his capacity as president of the corporation. There is no dispute that the lease was between the Vaughans and the corporation. All of the rental payments made under the lease were paid by corporate cheek.
The corporation became delinquent in its rental payments to the Vaughans. In April 1990 the corporation closed its Decatur operation.
The testimony at trial reveals the following: Vaughan suggested that a promissory note be signed for the amounts which remained unpaid under the lease and had the promissory note prepared on May 29, 1990, which was after the corporation had vacated the building. The total amount due to the Vaughans under the promissory note was $13,600, plus interest, which represented the balance of unpaid rent due under the terms of the lease. The promissory note provided that monthly payments of $400 were to be made beginning June 1, 1990. Vaughan prepared the promissory note to be signed as follows:
“X_
“Roy E. Eich [typewritten]
“d/b/a Bearings & Power Transmissions, Inc. [typewritten]”
The promissory note was sent to Eich by first-class mail. Eich testified that when he received the promissory note, he was concerned that the wording of the signature line would personally obligate him for the past-due rent incurred by the corporation. Eich further testified that he changed the wording of the signature line to indicate that he was signing the promissory note in his capacity as president of the corporation, and not in his individual capacity. Eich testified that he changed the signature line of the promissory note in the following manner:
“X /s/ Roy E. Eich, President [his signature]
“Roy E. Eich, President [Added a comma and printed the word President.]
“d/b/a Bearings and Power Transmissions, Inc. [This line was marked through by Eich.]
“Bearings & Power Transmission Co., Inc. [Printed by Eich just below the line that he had marked through.]”
After making the changes and signing the promissory note as indicated, Eich returned the note to the Vaughans by first-class mail. Vaughan testified that when he received the promissory note in the mail, he noticed that Eich had made the indicated changes. Vaughan further testified that while he did not receive any explanation regarding the changes, he did not question Eich about the changes that he had made. Vaughan admitted that after he accepted the promissory *115 note with the indicated changes, without question, comment, or further conversation regarding the changes, he received and accepted several payments on the promissory note. All of these payments were made by corporate checks.
Our review of the record also reveals that in December 1991 the corporation filed for reorganization under Chapter 11 of the bankruptcy code. Under the plan accepted by the bankruptcy court, the Vaughans were to receive fifty cents on the dollar for the monies due under the promissory note. Thereafter, the Vaughans filed suit against Eich, alleging that Eich was personally liable on the promissory note. As indicated, the trial court determined that Eich was not liable to the Vaughans under the promissory note, and the Vaughans appeal the trial court’s determination.
On appeal, the Vaughans argue that Eich is individually liable because he was not authorized by the corporation to execute the promissory note on behalf of the corporation. The Vaughans base this argument on the fact that Eich admitted at trial that there was no corporate resolution or any other document which authorized him to execute the promissory note on behalf of the corporation. The Vaughans also argue that Eich is individually liable because he failed to sign the promissory note in such a manner as to indicate clearly that he was signing on behalf of the corporation and because he failed to obtain an agreement from the Vaughans that the obligation would not be a personal obligation.
In its order the trial court relied upon Ala.Code 1975, § 7-3^03, which provides in pertinent part:
“(1) A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation. No particular form of appointment is necessary to establish such authority.
[[Image here]]
“(3) Except as otherwise established the name of an organization preceded or followed by the name and office of an authorized individual is a signature made in a representative capacity
(Emphasis added.)
In Ala.Code 1975, § 7-1-201(35), the term “representative” is defined to include “an officer of a corporation.” As previously indicated, Eich was the president and majority stockholder of the corporation.
Comment 1 to § 7-3-403 provides, in pertinent part, that “[the] power to sign for another ... may rest merely upon apparent authority. It may be established as in other cases of representation, and when relevant parol evidence is admissible to prove or to deny it.” “Apparent authority” was defined in Cahaba Veneer, Inc. v. Vickery Auto Supply, 516 So.2d 670, 673 (Ala.Civ.App.1987), as “that authority exercised by a corporate officer which, though hot actually granted by the corporation, is knowingly permitted by the corporation.” In the present case it is undisputed that the corporation made the payments under the promissory note with corporate cheeks.
In Phenix Girard Bank v. Cannon, 414 So.2d 926, 928 (Ala.1982), our supreme court stated the following:
“In order to avoid personal liability on an instrument, the agent should (1) name the organization represented; (2) sign his or her name and office; and (3) make the name of the agent and principal refer to each other so that a reasonable person could understand from the face of the instrument that the agent signed as a representative.”
During the trial, Vaughan admitted that Eich never told him that he would be personally liable for the debt incurred by the corporation. Vaughan also conceded that while he noticed that Eich had made changes on the signature line of the promissory note, he still accepted the promissory note with the indicated changes, without question, comment, or further conversation regarding the changes. Further, Vaughan admitted that he received and accepted several payments on the promissory note and that all of the payments made on the promissory note were paid by corporate checks.
*116 Our review of the record reveals that there was credible evidence to support the determination of the trial court. Further, after reviewing the record, we cannot say that the determination of the trial court was plainly wrong or manifestly unjust. City of Bridgeport, 571 So.2d 1089.
This case is due to be affirmed.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.