[Ryan v. Mayor and Councilmen of Tuscaloosa.]

# Ryan *v.* Mayor and Councilmen of Tuscaloosa.

*Injunction to Prevent Issue of City Bonds.*

(Decided 12, 1908.   46 South. 639.)

1. *Municipal Corporations; Meetings; Call Meetings; Notice.*—A meeting of the city council held at a time other than the regular meeting date, at which the mayor and all the aldermen were present, was a valid called meeting within the charter and ordinances of the city of Tuscaloosa, notwithstanding notice of such meeting may not have been given.

2. *Same; Resolution; Enactments.*—A resolution ordering an election, as authorized by General Acts 1903, to determine whether bonds should issue to construct or purchase a water works system, is not such a law or ordinance as is required by the code of ordinances of the city of Tuscaloosa upon its presentation for adoption, amendment or repeal at any meeting, to lie over until the next regular meeting.

3. *Same; Bond Issue Election; Method of Ordering.*—The calling of an election under General Acts 1903, page 59, to determine whether or not bonds should be issued to construct or purchase a water works system, may be done by a resolution; an ordinance to that effect is not required.

4. *Same.*—Section 22 of Article 12, Constitution 1901, and section 1, General Acts 1901, page 50, do not prescribe what course will be pursued in the application of the proceeds of the bonds, but that matter is left to the control and discretion of the council; and the submission of the question in this case as to whether bonds should be issued to purchase or construct, or both, a water works system, was valid.

5. *Same; Elections; Validity.*—Where no actual fraud or misconduct is imputed in the conduct of the election, or in declaring the result thereof, the election will not be declared void because the election was held by managers appointed by the mayor, although General Acts 1903, page 59, requires that the managers be appointed by the council, since the managers holding the election were de facto managers.

6. *Same.*—Under section 225, Article 12, Constitution 1901, it is not required as a condition precedent to the creation of an indebtedness in excess of the amount limited therein, that the preceding decennial, Federal Census, shall show a population of 6,000; it is sufficient that the city have a population of 6,000 at the time of the creation of the indebtedness.

APPEAL from Tuscaloosa County Court.

Heard before Hon. H. B. FOSTER.

Bill by W. A. Ryan, a tax payer, against the mayor and aldermen of the city of Tuscaloosa to prevent the issue of bonds of the city for the purpose of constructing or buying, or both, a water works system. From a decree for defendant plaintiff appeals. Affirmed.

FOSTER & OLIVER, for appellant. No valid action could be taken upon a bond issue except at a legal meeting of the counsel.—20 A. & E. Ency of Law, 1212. No ratification can be made of an act that is void. It is a legislative act and, therefore in the nature of an ordinance.—*Krebs v. Lednum*, 98 Fed. 549; *Bank v. City of Ark.*, 34 L. R. A. 518. The ballot used in the election did not comply with section 222 of the Constitution. 21 A. & E. Ency of Law, 49. The election was not held by lawfully appointed inspectors.—Sec. 4, Acts 1903, p. 61; *Phillips v. Cauliss*, 8 Colo. App. 346. The population of Tuscaloosa was not large enough to authorize the indebtedness.—*In Matter of Passic*, 54 N. J. Law, 161.

ROBISON BROWN, for appellee. The acts under which the bonds were ordered is constitutional.—*Blakey v. City of Montgomery*, 93 South. 745. The meeting was a legal meeting.—*Magenau v. City of Freemont*, 9 L. R. A. 786. The court will not interfere with the mayor and aldermen in the exercise of their discretion as to what method they will adopt in ordering an election.—McQuillan's Munic. Ord. secs. 2, 5, 76 and 77; *State v. Babcock*, 31 N. W. 8; *Solon v. Williamsburg Bank*, 31 Hunter 1; *City of Alna. v. Guarantee Safety Bank*, 60 Fed. 203; 20 A. & E. Ency. of Law, 1229. If the act was invalid the ordinance ratifying it rendered it valid and binding.—*Lovejoy v. Beason*, 25 South. 599; *Williams v. Board*, 21 Fed. 99; 87 Fed. 630; 8 Ill. 563; 6 Cent. Dig. 224. The ballot was in the proper form.—136 Fed. 721;

[Ryan v. Mayor and Councilmen of Tuscaloosa.]

77 S. W. 868; 71 Pa. 151; 31 South. 908; 65 S. W. 86; 85 Mo. 93. The population of respondent was more than 6,000 at the time of the holding of the election, and hence, sec. 225 of the Constitution does not apply.—31 South. 62; 33 L. R. A. 37; Ib. 589; 92 N. W. 740; *City of Owensboro v. Lancaster,* 72 S. W. 731.

McCLELLAN, J.—The bill in this cause is filed by a taxpayer of the city of Tuscaloosa in an effort to prevent the issue of bonds of the city for the purpose of constructing or buying, or both, a waterworks system. Five objections to the validity of the issue are taken by the appellant (complainant) and these are stated in the able opinion of the court below to be: First, the election ordered by the defendant which submitted the question to a vote, was not ordered at a legal meeting of the mayor and aldermen of the city of Tuscaloosa, and the ordinance by which said election was ordered was void; second, said ordinance ordering the election is void, because it was not passed in accordance with section 235 of the Code of Ordinances of the city of Tuscaloosa governing the passage of ordinances; third, the ballot which was prepared and used for the election did not specify the nature of the bonds, as required by section 222 of the Constitution; fourth, the election upon the proposed bond issue is void, because the city of Tuscaloosa, as shown by the last federal census, did not have a population of 6,000 or more, and this issue would create an indebtedness in excess, in amount, of that allowed by section 225 of the Constitution of 1901. The objections will be considered in the order of their statement.

The statutory and constitutional provisions pertinent may be found in sections 222 and 225, art. 12, of the Constitution of 1901, and Acts 1903, p. 59 et seq. Section 1 of the act cited, in the respect here important, is

31 C

as follows: "The mayor and common council, mayor and aldermen, or other governing body of any city or town in the state of Alabama is hereby authorized to order elections to be held in such city or town for the purpose of the qualified electors of such municipality voting upon and deciding the question as to whether or not the bonds of such municipality shall be issued for the purpose of purchasing or constructing public buildings, sewers, streets, alleys, bridges and public school houses and buildings, to purchase water works and light plants, or to construct the same or for such other purposes as are authorized by law whenever such governing body deems it necessary." The meeting of the council, at which a resolution ordering the election upon the question of issue of these bonds was adopted, was held on November 2, 1906. According to the then in force code of laws of the city that day was not the date on which a regular meeting of the council should be held; but by the ordinance fixing the time, each month, when the regular meeting should be had, it is also provided that "called meetings may be held at any time at the pleasure of the mayor, by written notice designating the time and place of the meeting, or on the written application of two aldermen, the mayor shall likewise order a called meeting." So far as we can discover this ordinance as to "called meeting" is an iteration of the charter provision in that regard. It is to be noted that no written notice of the purpose of a "called meeting" is required either by the charter or by the ordinance. In the agreed statement of facts it is recited: "The resolution attached as Exhibit A (that exhibit is the resolution ordering the election) to the bill was introduced and unanimously adopted by the mayor and aldermen of the city of Tuscaloosa at its meeting held on the 2d day of November, 1906, and every member of said mayor and alder-

men being present and voting for said resolution. * * *" We can see no escape from the conclusoin that the meeting held on November 2, 1906, was a "called meeting" within the contemplation of the charter and ordinance of the city. Had the notice provided in the charter and in the Code as quoted been given, it could have accomplished no more than appears to have taken place upon the convention of "every member of said mayor and council." It results that the meeting at which the election was ordered could validly enter upon the duties undertaken in the calling of the election in the premises.

The second objection rests upon the failure of the council to observe the provisions of section 235 of the City Code. That section is: "No law or ordinance presented by any member of the board for adoption, amendment or repeal, at any meeting, shall be acted on until the next regular meeting: Provided, however, that the board may at any time suspend the rule by a unanimous consent of those present." It is too evident, in the light of the generally understood difference between ordinances and resolutions, that the inhibition of the recited section has no application here, because the action taken by the council was by resolution, and not by "law or ordinance." But under the head of this objection it is insisted that the action of the council in directing the election on the issue in hand should have been by ordinance and not by resolution. Neither the Constitution nor the act of the Legislature (cited above) makes any provision for the method by which the governing body shall order the election on an issue of bonds. Certainly we cannot interpolate such a condition. It is doubtless well said, by many courts and text writers, that where permanent action is attempted to be taken by a municipal body an ordinance is the proper method. Laws pro-

mulgated by such an institution were better to be expressed in an ordaining form. But this is far from affirming that only by that means (ordinance) can a municipal board express, as leading to an election on the issue, its judgment that such an issue should be voted on by the electorate of the town or city. The board's calling of the election is a merely preliminary step to invite the ballots of electors. The bonds, if issued, rest, not upon the call for the vote, but upon the declared (by ballot) will of a majority of the voters of the town or city. We therefore think there is no merit in the second objection.

The question submitted by the action of the council to the voters of the city of Tuscaloosa was whether $125,000 of the described bonds thereof should be issued "for the purpose of purchasing or constructing (one or both) an adequate system of waterworks. * * *" The ballot used in the election bore, on separate lines, with space for making the requisite X mark, the expressions: "For Waterworks Bond Issue," and "Against Waterworks Bond Issue." The third objection is grounded in the idea that the question submitted to the electorate was whether the bonds should issue for the purpose of constructing or buying, one or both, a water system for the city, and thus submitted a double proposition, the determination between which was left to the discretion of the council, whereas it should have been left to the voters. Manifestly this insistence is untenable. The constitution and related enactment cited before require the issue of the bonds to bear the approval of the majority concerned. What course will be pursued in the application of the proceeds of the bonds to the ownership of a water system by the city is a matter designed by the Constitution and the act in question to be in the control and discretion of the governing body. The provisions pertinent merely require that the governing body shall determine

[Ryan v. Mayor and Councilmen of Tuscaloosa.]

the necessity, in its judgment, for the construction or purchase of a water system, and, this being done, the electorate must be consulted in order that the obligations of the city may be issued. Whether an elector will, by his ballot, approve the issue of the bonds, the proceeds of which must go to the providing of a water system, may be controlled by the discretion, between two methods, reserved by the council; and if such voter is unwilling to sanction the application of the proceeds of the proposed bonds to either the construction or purchase of a system of waterworks his course is to vote against the issue. It is readily conceivable that such a discretion as we find indicated in the course pursued by this council, where a system of waterworks already exists in a city, would be wisely and in the public interest provided, to the end that equitable arrangements might be made in the purchase of the existing system. Reasons might be multiplied to refute the unsoundness of the objection treated.

The facts upon which the fourth objection is predicated are that the election was not held by the managers appointed by the council, but by those named by the mayor, whereas the act cited provides that the managers shall be appointed by the governing body. Aside from other grounds upon which the overruling of this objection might be rested, it is clear that the invalidity of this election cannot be pronounced where the officers holding the same were de facto, and no actual fraud or misdemeanor is imputed in the conduct or result of the election. 15 Cyc. p. 310 et seq., and notes; McCrary on Elections, §§ 247-252. In the latter citation a full discussion of the rule applied appears, embracing the opposing view, and setting forth the whole reasons which support, we think, the conclusion announced by us.

The last objection (fifth) involves a construction of

one provision of section 225 of the Constitution. The facts agreed upon between the parties litigant establish that the city of Tuscaloosa had, according to the last federal census, less than 6,000 population, and that at the time the election in question was ordered the population of that city was more than 6,000. The point taken is that the provision (to be quoted) of the Constitution contemplates and requires, as a condition precedent to the creation of an indebtedness beyond the limits in amount therein stipulated, the preceding decennial federal census shall show such a population of the city desiring to create the indebtedness as will exempt the city from the inhibition of the section. The section appealed to is as follows:

"Sec. 225. No city, town, or other municipal corporation having a population of less than six thousand, except as hereafter provided, shall become indebted in an amount including present indebtedness, exceeding five per centum of the assessed value of the property therein, except for the construction of or purchase of waterworks, gas or electric lighting plants, or sewerage, or for the improvement of streets, for which purpose an additional indebtedness not exceeding three per centum may be created: Provided, this limitation shall not affect any debt now authorized by law to be created, nor any temporary loans to be paid within one year, made in anticipation of the collection of taxes, not exceeding one-fourth of the annual revenues of such city or town. All towns and cities having a population of six thousand or more, also Gadsden, Ensley, Decatur, and New Decatur, are hereby authorized to become indebted in an amount including present indebtedness, not exceeding seven per centum of the assessed valuation of the property therein, provided that there shall not be included in the limitation of the indebtedness of such last de-

scribed cities and towns the following classes of indebt-
edness, to wit: temporary loans, to be paid within one
year, made in anticipation of the collection of taxes, and
not exceeding one-fourth of the general revenues, bonds
or other obligations already issued, or which may here-
after be issued for the purpose of acquiring, providing
or constructing school houses, water works and sewers;
and obligations incurred and bonds issued for streets
or sidewalk improvements (a) where the cost of the
same, in whole or in part, is to be assessed against the
property abutting said improvements: Provided, that
the proceeds of all obligations issued as herein provided,
in excess of said seven per centum shall not be used for
any purpose other than that for which said obligations
were issued. Nothing contained in this article shall
prevent the funding or refunding of existing indebted-
ness. This section shall not apply to the cities of
Sheffield and Tuscumbia."

The wisdom of the limitations upon indebtedness by
municipalities set down in the section is too apparent to
be the object of even a disposition to discover any con-
struction in qualification of its plain mandate in respect
of the subject in hand. But it is equally our duty to
refrain from interpolations that would alter the section.
The section in hand predicates the limitation of indebt-
edness upon "population." That is the condition, the
fact upon which the limitation operates. The complain-
ant's insistence, in legal effect, leads to the proposition
—to the construction—that the ascertainment of the
condition (population) must be by the last federal cen-
sus. The most casual reading of the section of the or-
ganic law demonstrates that the instrument is wholly
silent as to the means for the ascertainment of the popu-
lation of the city or town; and a census, official though
it is, is but a means for the ascertainment of the number

[Ryan v. Mayor and Councilmen of Tuscaloosa.]

of persons. Can we, by construction, supply this means? we think not.' If so it was ruled, the result would be, not only an unwarranted interpolation of a most material provision into the section, but also to render the section utterly unavailable, possibly for near ten years between decennial federal censuses, to towns and cities having, at the time such census was taken, less than 6,000 population, notwithstanding within a month thereafter the population was greater than 6,000. In short, under the construction urged for complainant, it is easily conceivable that for nine years and more the privilege of the section would be denied to towns and cities having in fact the requisite population at the time the bonds were desired to be issued; but to such a result the makers of the Constitution have, under no interpretation, written.

A conclusive reason, however, in support of the view expressed, is found in the fact that in other places in the instrument the decennial federal census is provided as the means for the ascertainment of the population for the purpose of apportionment of representation in the legislative branch of the government. From this it is evident that, in omitting mention of such census in the section under consideration, a clear intent is manifested to leave the ascertainment, upon occasion, of the population to means properly serviceable to that end. Independent, of course, of the peculiar phrasing and structure appearing in our organic law, but treating analogous questions, the courts of Lousiana, in *McFarlain v. Jennings*, 106 La. 541, 31 South. 62, of Washington, in *Anderson v. Whatcom County*, 15 Wash. 47, 45 Pac. 665, 33 L. R. A. 137, of Nebraska, in *State v. Davis*, 66 Neb. 333, 92 N. W. 740, and of Kentuckey, in *Lancaster v. Owensboro*, 72 S. W. 731, 24 Ky. Law Rep. 1978, announce conclusions authoritative on this appeal. The

[Nelms, et al. v. Rogers.]

New Jersey court, *in Re Passaic*, 54 N. J. Law, 156, 23 Atl. 517, seems to take a contrary view; but we do not think that holding sufficiently influential, if applicable at all, to overcome the preponderance of reason and authority adverted to before as inducing our conclusion that the fifth objection is unsound.

To what extent the legislation may be constitutionally enacted toward the evidential ascertainment of population in such cases we do not decide. The objections stated being untenable, the judgment is affirmed.

Affirmed.

DOWDELL, SIMPSON, ANDERSON, and DENSON, JJ., concur. TYSON, C. J., concurs in the conclusions reached as to all the objections save the fifth, as to which he entertains the opinion that the last decennial federal census is the criterion for the finding vel non of the condition (population) upon which the limitation is based, in the absence of state legislation authorizing the taking of a census.