The City of Bridgeport, Alabama, and Ray Janney, its mayor,[1] appeal a preliminary injunction entered by the Circuit Court of Jackson County. The injunction was entered following a determination that the City of Bridgeport had failed to meet the requirements set out in Ala. Code 1975, §§ 28-2A-1 et seq. and 11-47-90, and therefore was not entitled to call and hold a municipal option referendum on the question whether to change its classification from "dry" to "wet." We affirm.
The federal decennial census of 1980 determined the population of the City of Bridgeport to be 2,974. Between July 7, 1987, and September 19, 1989, the City of Bridgeport conducted four separate annexations, thereby increasing its population. We note that the legality of the annexations is not an issue on appeal.
Subsequent to the four annexations, the City of Bridgeport attempted to authorize a special census, pursuant to §11-47-90, to determine whether it had become large enough to conduct a wet-dry referendum.[2] The city appointed John Lewis, a city councilman, as enumerator to conduct the census. Lewis employed several college students to assist him with the census. The special census revealed a population of 4,231 inhabitants within the city limits. Because the City of Scottsboro, Alabama, a municipality of more than 7,000 residents within Jackson County, had previously voted "wet" in 1984, a population of only 4,000 inhabitants is needed to conduct a wet-dry referendum in the City of Bridgeport. Ala. Code 1975, § 28-2A-4.
After the census was completed, a petition was filed with the clerk of the City of Bridgeport calling for a municipal option referendum to determine the sentiment of the citizens as to whether alcoholic beverages should be legally sold, consumed, and distributed within the municipality. The petition contained 566 signatures; about 1,100 to 1,200 voters had participated in the last election held in the City of Bridgeport. A "wet-dry referendum" was scheduled to coincide with the June 5, 1990, primary election. Notice of the referendum was posted at the city hall, in the city water works bulletin, and on the bulletin board at the local United States Post Office. In addition, several newspaper articles concerning the referendum were published in two Jackson County newspapers.
On May 25, 1990, the Citizens Action Committee and Sam Cobb, Patsy Hodge Rorax, John H. Gass, Barrion G. Purdy, Jean Cobb, and Alonza L. Ross, Jr. (hereinafter collectively referred to as the "Citizens Action Committee"),[3] filed a complaint challenging the call for a municipal option election and sought an injunction to prevent the referendum. The City of Bridgeport responded to the Citizens Action Committee's complaint by filing a motion to dismiss. A hearing was scheduled for May 31, 1990.
At the hearing, the trial judge heard the testimony of various witnesses. He had before him various documents upon which both parties based their claims, and he could review for himself whether the evidence before him provided proof of compliance with the appropriate statutes. At the conclusion of the hearing, the trial judge held that the requirements of § 28-2A-1 had not been met and he entered an order *Page 1091 
enjoining the City of Bridgeport from conducting a municipal option referendum on June 5, 1990, and from calling a municipal option referendum until the requirements of § 28-2A-1 et seq. were met.
The City of Bridgeport appealed and filed a motion to stay enforcement of the preliminary injunction pending the appeal. We stayed the enforcement of the injunction as well as the implementation of the results of the June 5, 1990, wet-dry referendum, pending appellate review.
On June 5, 1990, the wet-dry referendum was held. The vote was 629 to 341 to allow the sale, distribution, and consumption of alcoholic beverages within the city limits of Bridgeport.
The City of Bridgeport contends that the language of §28-2A-4 is ambiguous in regard to how a municipality is to determine its population and that it is the function of this Court to clarify the legislative intent pertaining to this statute. More specifically, the City of Bridgeport claims the trial court erred in holding it to the strict requirements of §11-47-90, which governs the term "census," and further claims that a "municipality has common law authority to conduct a population count by 'means properly serviceable to that end,' " citing as authority for this proposition Ryan v. City ofTuscaloosa, 155 Ala. 479, 46 So. 638 (1908). However, we find no merit to this argument.
The Citizens Action Committee simply asserts that when a municipality conducts a census to determine its population count for the purpose of a wet-dry referendum, such a census must fully comply with the requirements set forth in §§ 28-2A-1
through -4 and §§ 11-47-90 through -95.
First, we note that our review of the trial court's ruling in this matter is governed by the familiar standard of the ore tenus rule. By that rule, the decision of the trial judge, sitting without a jury, based upon disputed facts presented orally to the court, is presumed to be correct and will be affirmed on appeal as long as " 'it is fairly supported by credible evidence under any reasonable aspect and is not palpably wrong or manifestly unjust.' " Charles IsraelChevrolet, Inc. v. Walter E. Heller Co., 476 So.2d 71, 73
(Ala. 1985) (quoting Whitt v. McConnell, 360 So.2d 336, 337
(Ala. 1978). Our review of the record convinces us that the trial judge's ruling was clearly supported by the evidence.
There is no provision in §§ 28-2A-1 through -4 for how population is to be determined for purposes of an election. However, this Court has stated that § 28-2A-1 does not require that only a decennial census conducted by the United States Department of Commerce, Bureau of the Census, be used to determine the population of a municipality. Dennis v. Pendley,518 So.2d 688, 690 (Ala. 1987). The Alabama Code recognizes two methods for determining the population of a municipality. Sections 11-47-90 and -91 authorize a municipality to conduct its own census and provide strict guidelines to ensure the integrity of the census. Section 11-47-90 provides:
 "Municipal corporations may by ordinance require a census to be taken of the inhabitants residing within the corporate limits of such municipality. Such census shall be taken by enumerators, who shall be responsible citizens appointed by the mayor and confirmed by the council. Such enumerator or enumerators shall take such census block by block and shall state, as far as practical, the name, age, sex and race of each person residing within such municipality. They shall, before entering upon their duties, take and subscribe the following oath: 'I solemnly swear that I will honestly and conscientiously enumerate the inhabitants living within the town or city, or portion thereof allotted to me for enumeration.' "
Section 11-47-91 provides, in pertinent part:
 "Such enumeration shall be alphabetically arranged and returned to the mayor, together with the original books of enumeration. The mayor shall thereupon certify to the secretary of state the result of such census, giving the total number of each race residing within the corporate limits of the municipality, and the result so certified by the mayor under *Page 1092 
the seal of the municipality, attested by the clerk, shall be the official census of such city or town until the next federal census or until a new enumeration shall have been taken."
The record indicates that the City of Bridgeport failed to comply with these statutory guidelines. There is no evidence of record that the appointed enumerator, John Lewis, was ever confirmed by the city council. The record also reveals that the college students that assisted Lewis with the census were employed by him and were not appointed or confirmed by the mayor. In addition, there is no evidence of record to indicate that the students took the oath required of enumerators. The individual who conducted the actual count or tally of the census papers, Inda Galovich, also was not appointed or confirmed as a census enumerator. The final results of the census were never certified under seal nor filed with the Alabama Secretary of State. Clearly, the City of Bridgeport has failed to comply with the statutes governing the census-taking process.
The Citizens Action Committee raises several other issues involving the City of Bridgeport's failure to comply with §28-2A-1; however, because the census was improperly conducted, thereby making it unofficial and invalid, further discussion of compliance with § 28-2A-1 is unnecessary.
Therefore, having considered the record and the trial court's ruling in light of the applicable standard of review, we conclude that because the City of Bridgeport failed to comply with the guidelines provided in the census statutes, the census was unofficial and the census count of 4,231 is invalid and fails to establish the population of 4,000 necessary to conduct a municipal option referendum. Thus, the trial court was correct in ruling that the City of Bridgeport's municipal option referendum on June 5, 1990, was invalid. The judgment of the circuit court is hereby affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, JONES, ALMON, SHORES, ADAMS and HOUSTON, JJ., concur.
[1] Because the mayor's position is consistent with that of the city, we shall refer in this opinion only to the city.
[2] Section 11-47-92 authorizes the City of Bridgeport to pay the Bureau of the Census, United States Department of Commerce, to conduct a census; however, the city did not choose this option.
[3] Cobb, Rorax, Gass, Purdy, Cobb, and Ross are members of the Citizens Action Committee.