STUART, Justice.
The City of Pike Road appeals the judgment entered by the Montgomery Circuit Court holding that a manufacturing facility owned and operated by Dow Corning Alabama, Inc.,[1] located at 1940 Ohio Ferro Road in Mt. Meigs (“the Mt. Meigs facility”), an unincorporated part of Montgomery County, is within the police jurisdiction of the City of Montgomery as opposed to the police jurisdiction ■ of Pike Road. We affirm.
I.
The boundaries of an Alabama municipality’s police jurisdiction aré set by § 11-40-10(a), Ala.Code 1975, which, at all times relevant to this action, provided:
“The police jurisdiction in cities having 6,000 or more inhabitants shah cover all adjoining territory within-three miles of the corporate limits, and in cities having less than 6,000 inhabitants and in towns, such police jurisdiction shall extend also to the adjoining territory within a mile and a half of the corporate limits of the such city or town.”[2]
In approximately January 2012, following a change in the methodology Montgomery used to draw the boundaries of its police jurisdiction, Montgomery contacted Dow Corning Alabama and advised it that its Mt. Meigs facility was now located within Montgomery’s police jurisdiction; accordingly, Montgomery stated, the Mt. Meigs facility was subject to all applicable Montgomery taxes, rules, regulations, and ordinances. Dow Corning Alabama thereafter agreed that it would henceforth remit sales and use taxes to Montgomery as required by § 11-51-206, Ala.Code 1975.[3]
Dow Corning Alabama was also notified at that time that any capital improvements it subsequently planned for the Mt. Meigs facility would have to comply with all ap *646 plicable Montgomery building and zoning regulations and requirements. In the spring of 2014, Dow Corning Alabama did in fact initiate several capital improvements at the Mt. Meigs facility, and it obtained the required permits and bonds from Montgomery at a cost of $3,942.
In association with- those capital improvements, Dow Corning Alabama also retained a local engineering firm to assist it in seeking the rezoning of the property on which the Mt. Meigs facility was located to a less-restrictive classification. On August 4, 2014, a representative of that engineering firm met with an official in Montgomery’s planning department to discuss possible rezoning of the property and was told that the Mt. Meigs facility was now located within the police jurisdiction of Pike Road and was thus no longer subject to Montgomery’s zoning regulations. In subsequent meetings with Pike Road officials later that week, those officials confirmed that the Mt. Meigs facility was now located in Pike Road’s police jurisdiction and that Dow Corning Alabama would need to begin remitting all applicable sales and use taxes to Pike Road beginning in September 2014. Dow Corning Alabama accordingly purchased a building permit from Pike Road for $2,542 covering the same capital project for which it had already purchased a building permit from Montgomery.
The assertion that the Mt. Meigs facility was now located within the police jurisdiction of Pike Road was based on the fact that the United States Census Bureau’s 2013 estimate of the population of Pike Road was 7,506; thus, Pike Road took the position that, as a city “having 6,000 or more inhabitants,” its police jurisdiction automatically extended three miles from the Pike Road city limits pursuant to § ll-40-10(a). In fact, on February 10, 2014, the Pike Road city council had adopted Resolution No. 006-2014 declaring as much and stating that “[njotice is hereby given that by operation of § 11-40-10, the police jurisdiction of Pike Road, Alabama now covers all territory within three miles of the corporate limits.” Ten days after the adoption of Resolution No. 006-2014, planning officials from Montgomery and Pike Road met and produced a new map setting forth the respective police jurisdictions of the two cities. That map indicated that the Mt. Meigs facility was within three miles of the city limits of both Montgomery and Pike Road; however, because it was closer to the city limits of Pike Road, the Montgomery and Pike Road officials agreed that it was subject only to Pike Road’s jurisdiction. See § 11—51—91(c), Ala.Code 1975 (“When the place at which any business, trade, or profession is done or carried on is within the police jurisdiction of two or more municipalities which levy the licenses thereon authorized by this section, the licenses shall be paid to, issued, and collected by that municipality only whose boundary measured to the nearest point thereof is closest to the business, trade, or profession.”).[4]
In late August 2014, Dow Coming Alabama contacted Kimberly Fehl, the city attorney for Montgomery, to confirm that the Mt. Meigs facility was no longer subject to regulation from Montgomery. In an August 28, 2014, letter, Fehl notified *647 Dow Coming Alabama that Montgomery took the position that Resolution No. 006-2014 was of no effect and that the Mt. Meigs facility was still solely within the police jurisdiction of Montgomery:
“Resolution 006-2014 reflects the population of the Town of Pike Road,[5] according to the U.S. Census Bureau, has now exceeded 6,000. Although the U.S. Census Bureau ‘estimates’ increase and decrease in municipal population, it is [Montgomery’s] position that an annual projected estimate by the U.S. Census Bureau is not valid authority to extend the police jurisdiction [to] three miles and collect license and taxes in that area. We are unaware of any census taken for the Town of Pike Road that qualifies under Alabama law. Resolution 006-2014 only references the U.S. Census as authority to expand the [police jurisdiction], and according to the last certified U.S. Census, the Town of Pike Road had a population of 5,406.”[6]
On the advice of counsel, Dow Corning Alabama thereafter engaged with the planning departments of both Montgomery and Pike Road as it continued work on its ongoing capital improvements, even though this at times necessitated receiving simultaneous inspections and approvals from both cities and, at least one time, inspectors from Montgomery refused to provide a requested inspection and permit because they continued to believe that Pike Road had jurisdiction over the location.
Finally, on September 19, 2014, Dow Corning Alabama initiated an interpleader action in the Montgomery Circuit Court asking that court to resolve the dispute between Montgomery and Pike Road and authorizing Dow Corning Alabama to in-terplead all disputed sales- and use-tax payments pursuant to Rule 22, Ala. R. Civ. P., until the dispute was resolved.[7] Dow Corning Alabama also sought an injunction barring both cities from enforcing any building requirements or zoning regulations until the matter was resolved and requiring the ultimately prevailing city to recognize any capital improvements commenced during the course of litigation as being grandfathered once the dispute was resolved. Both Montgomery and Pike Road subsequently consented to an order of interpleader being entered, and, on October 16, 2014, the trial court entered the requested order.
Montgomery and Pike Road thereafter both filed answers and moved the trial court to enter either a judgment on the pleadings or a summary judgment. On January 14, 2015, the trial court entered a judgment on the pleadings in favor of Montgomery. Both Pike Road and Dow Corning Alabama thereafter moved the trial court to alter, amend, or vacate its *648 judgment, and, on February 11, 2015, the trial court entered an amended order again entering a judgment on the pleadings, in. favor of Montgomery and stating, in relevant part:
“1. The court finds that [Pike Road] has two options available for establishing whether its number of inhabitants exceeds 6,000 for the purposes of extending its police jurisdiction from one and a half miles to three miles beyond its corporate limits pursuant to § 11-40-10(a).
“a.Pike Road can wait for the next U.S. decennial census (since the 2010 census reports Pike Road as having ■less than 6,000 inhabitants); or
“b. It can conduct its own municipal census in accordance with the requirements of §§ 11-47-90 through -95, Ala.Code 1975.
“Pike Road has produced no evidence ...' indicating that á U.S. decennial census has found its population exceeds 6,000 and it has produced no evidence that it has conducted a statutory municipal census, pursuant to §§ 11-47-90 through -95, establishing it has more than 6,000 residents
[[Image here]]
“4. The land on which [the Mt. Meigs facility] is located currently remains within the police jurisdiction of Montgomery;
“5,. [Dow Corning Alabama] shall remit, all municipally levied sales and use taxes which become due after the entry of this order directly to Montgomery;
“6. Any licenses, permits, inspections, and approvals necessary to be obtained by [Dow Corning Alabama] in connection with the capital improvements and projects being undertaken in respect of [the Mt. Meigs facility] shall henceforth be obtained from Montgomery only; provided, however, that any projects commenced by [Dow Corning Alabama] prior to the date of the entry of this order are grandfathered under the zoning regulations of Montgomery as a legal non-conforming use;
“7. The court hereby, grants [Dow Corning Alabama’s] motion for an award of counsel fees and. disbursements incurred in the foregoing action pursuant to Rule 22(c), Ala. R. Civ. P....;
“8. The clerk of the court is hereby ordered to disburse the previously inter-pleaded funds by paying to [Dow Corning Alabama] the sum of $36,489.57, or so much of said sum as may be satisfied by such funds, as reimbursement for counsel fees and disbursements as ordered and awarded in the previous paragraph, with any balance of interpleaded funds being paid to Montgomery; and
“9. Except for the sales and use taxes previously interpleaded herein by [Dow Corning Alabama], [Dow Corning Alabama] is hereby fully released and discharged from any liability whatsoever, whether claimed by Montgomery, Pike Road, or otherwise, for any municipally levied sales or use taxes otherwise payable to any party or person during the pendency of this litigation.”
Pike Road immediately filed a notice of appeal and moved the trial court to stay its judgment pending appeal; however, on February 25, 2015, the trial court denied Pike Road’s request for a stay.
On March 13, 2015, Dow Corning Alabama timely moved the trial court to alter or amend its judgment.[8] In support of its motion, Dow Corning Alabama stated that *649 it had learned, in the period after the trial court’s February 11 judgment: (1) that a portion of the real ■ property upon which the Mt. Meigs facility was located was situated within a mile and a half of Pike Road’s city limits, and (2) that the Montgomery Circuit Court had, in an unrelated case decided August 27, 2013, made a finding of fact that “[t]he population of [Pike Road] exceeds 6,000 residents.” Town of Pike Road v. Taxpayers & Citizens of Pike Road (case no. CV-2013-901203.00). Dow Corning Alabama submitted evidence substantiating its claims with its motion, and Pike Road thereafter submitted a response supporting Dow Corning Alabama’s motion, while Montgomery submitted a response opposing it.[9] On March 27, 2015, the trial court denied the motion to alter, amend, or vacate its judgment, and, upon receiving notice of the same, this Court returned Pike Road’s appeal to the active docket and all applicable time requirements began to run. .
On August 27, 2015—after briefing was completed in the case—Pike Road submitted to this Court a new submission accompanied by documentary evidence indicating that new facts had arisen, which facts, Pike Road claimed, mooted some of the issues involved in this appeal. Specifically, Pike Road alleged that it had completed two annexations in July 2015 that resulted in Pike Road’s city limits extending to the border of the property upon which the Mt. Meigs facility was located; accordingly, Pike Road argued, the Mt. Meigs facility was now undisputedly located in Pike Road’s police jurisdiction, regardless of whether that police jurisdiction extends a mile and a half or three miles from Pike Road’s city limits. Montgomery thereafter filed its response to Pike Road’s submission, arguing that Pike Road’s arguments came too late and that, in any event, it remained to be seen whether in fact the July 2015 annexations were legally valid. Accordingly, Montgomery urges this Court to decide this appeal based on the record as it existed at the time the appeal was filed.
II.
“When a motion for judgment on the pleadings is made by a party, ‘the trial court'reviews the pleadings filed in the case and, if the pleadings show that no genuine issue of material fact is presented, the trial court will enter a judgment for the party entitled to a judgment according to the law.’ B.K.W. Enters., Inc. v. Tractor & Equip. Co., 603 So.2d 989, 991 (Ala.1992). See also Deaton, Inc. v. Monroe, 762 So.2d 840 (Ala.2000). A judgment on the pleadings is subject to a de novo review. Harden v. Ritter, 710 So.2d 1254, 1255 (Ala.Civ.App.1997). A court reviewing a judgment on the pleadings accepts the facts stated in the complaint as true and views them in the light most favorable to the nonmoving party. Id. at 1255-56.”
Universal Underwriters 1 Ins. Co. v. Thompson, 776 So.2d 81, 82 (Ala.2000). We .accordingly review de novo the judgment entered by the trial court.
III.
The trial court’s judgment declaring that the Mt. Meigs facility is located within the police jurisdiction of Montgomery rests on the premise that a municipality’s police jurisdiction expands to the area within three miles of its city limits pursu *650 ant to § ll-40-10(a) only when a decennial census conducted by the United States Census Bureau or a municipal census conducted pursuant to § 11-47-90 et seq., Ala.Code 1975, establishes that the population of that municipality exceeds 6,000 inhabitants. Before considering the other arguments raised by the parties, we first consider the validity of that premise.
As this Court has stated several times:
“The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect. Tuscaloosa County Comm’n v. Deputy Sheriffs’ Ass’n of Tuscaloosa County, 589 So.2d 687 (Ala. 1991).”
IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992). In this case, however, § 11-40-10 is silent with regard to the issue now before the Court—how a municipality’s population should be determined for purposes of determining its police jurisdiction. Because the plain language of § 11-40-10 does not give explicit guidance on this issue, we must ascertain the legislature’s intent through other means. In James v. McKinney, 729 So.2d 264, 267 (Ala.1998), this Court was similarly called upon to construe a statute that failed to explain how to make a certain classification; after noting the ambiguity of the statute, the Court explained that “a court should examine related statutes” in order to determine legislative intent in such situations.[10] See also Dunn v. Alabama State Univ. Bd. of Trustees, 628 So.2d 519, 523 (Ala.1993) (“In construing a statute, we are permitted, indeed required, to compare statutes addressing ‘related subject[s].’ House v. Cullman County, 593 So.2d 69, 75 (Ala. 1992) (quoting 2A Sutherland Stat. Const., § 51.02 (4th ed.)).”).[11]
Although § 11-40-10 contains no provision for how a municipality’s population should be determined, § 11-40-6, Ala. Code 1975, does, stating unequivocally that “[t]he last census, whether federal or taken as authorized in this title, shall be used in determining the population of a city or a town.”[12] Pike Road argues that this di *651 rective should relate only to determining population for purposes of deciding whether a municipality is a city or a town; however, the clear language of the statute is not so limiting—the relevant sentence in its entirety states only that “[t]he last census, whether federal or taken as authorized in this title, shall be used in determining the population of a city or a town.” This Court cannot, as Pike Road effectively urges, modify the statute to read “the last census, whether federal or taken as authorized in this title, shall be used in determining the population of a city or a town for the purpose of determining whether said municipality is properly classified as a city or a town.” See, e.g., Elmore County Comm’n v. Smith, 786 So.2d 449, 455 (Ala.2000) (“We will not read into a statute what the Legislature has not written.”).
Pike Road, however, argues that § 11-40-6 and § 11-40-10 “don’t even remotely deal with the same subject other than they both relate generally to municipalities,” and it accordingly argues that § 11-40-6 is essentially irrelevant when construing § 11-40-10. Pike Road’s brief, p. 27. However, Pike Road fails to recognize that the principle of in pari materia does not require that the statutes being analyzed share an identical subject matter. To the contrary, this Court has indicated that the subject matter of the statutes being analyzed need only be “related,” “similar,” or the “same general[ly].” See James, 729 So.2d at 267 (“In determining legislative intent, a court should examine related statutes.”); Ex parte Johnson, 474 So.2d 715, 717 (Ala. 1985) (“It is a fundamental principle of statutory construction that statutes covering the same or similar subject matter should be construed in pari materia.”)', and Willis v. Kincaid, 983 So.2d 1100, 1103 (Ala.2007) (“ ‘[Sjtatutes must be construed in pari materia in light of their application to the same general subject matter.’ ” (quoting Opinion of the Justices No. 334, 599 So.2d 1166, 1168 (Ala.1992))). Pike Road has conceded that § 11-40-6 and § 11-40-10 have, at least, the same general subject matter—municipalities; it is accordingly altogether proper to construe the two statutes in pari materia.[13]
We further note that Pike Road has identified multiple classification statutes in the Alabama Code that tie the population of a municipality solely to the federal decennial census, see, e.g., §§ 11-40-14, 11-43-2, 11-43-7.1, 11-43-190, 11-48-30, and 11-51-128, Ala.Code 1975, as well as multiple other classification statutes like § 11-40-10 in which no specific method for determining a municipality’s population is set forth, see, e.g., §§ 11-32-1, 11-40-23, 11-42-58, and 11-43-5.1, Ala.Code 1975, and it accordingly argues that, “[i]f — the Alabama Legislature intended that the population of municipalities be governed by *652 § 11-40-6 for all purposes, why would the Legislature then find it necessary to set forth a means of ascertainment in some statutes but not others?”[14] Pike Road’s reply brief, at p. 15. It seems apparent, however, that the legislature explicitly stated in some statutes that population should be determined solely by the federal decennial census because those statutes are exceptions to the default rule set forth in § 11-40-6 that a municipality’s population may be determined either by federal decennial census or by a duly conducted municipal census, and no method of discerning population is set forth in the other cited statutes precisely because the default rule of § 11-40-6 applies.[15] This conclusion that § 11-40-6 supplies the default rule for the methods that a municipality might use to establish its population—rooted in the plain-language declaration of that statute- that “[t]he last census, ■ whether federal or taken as authorized in this title, shall be used in determining the population of a city or a town”—is not undermined by the fact that the legislature has in certain instances opted to- further restrict the methods available; rather, it reflects the Court’s duty to interpret statutes together so as “ ‘to form one harmonious plan and give uniformity to the law* ” while nevertheless recognizing the prerogative of the legislature to carve out exceptions to the general rules it creates. Ex parte Coffee Cnty. Comm’n, 583 So.2d 985, 988 (Ala. 1991) (quoting League of Women Voters v. Renfro, 292 Ala. 128, 131, 290 So.2d 167, 169 (1974)).[16]
*653 Finally, our conclusion that the.directive in § 11-40-6 providing that “[t]he last census, whether federal or taken as authorized in this title, shall be used in determining the population of a city or a town” applies to ali other statutes requiring the determination of a municipality’s population in the absence of a more specific directive in the subject statute also explains what might otherwise appear to be a contradiction in our caselaw. In support of its arguments, Montgomery has cited City of Bridgeport v. Citizens Action Committee, 571 So.2d 1089 (Ala.1990), in which we considered § 28-2A-1 et seq., Ala.Code 1975, which authorizes municipalities of a certain size to hold a municipal-option referendum on the question whether to change their classification from “dry” to “wet” or vice versa. The City of Bridgeport held such a referendum, and, after the fact, the question- arose whether Bridgeport had properly established that it actually had the 4,000 inhabitants necessary to hold such a referendum. 571 So.2d at 1090. In concluding that it had not, this Court stated:
“There is no provision in §§ 28-2A-1 through -4 for how population is to be determined for purposes of an election. However, this Court has stated-that § 28-2A-1 does not require that only a decennial census conducted by the United States Department of Commerce, Bureau of the Census, be used to determine the population of a municipality. Dennis v. Pendley, 518 So.2d 688, 690 (Ala.1987). The Alabama Code recognizes two methods for determining the population of a municipality. Sections 11-47-90 and -91 authorize a municipality to conduct its own census and provide strict guidelines to ensure the integrity of the census,”
571 So.2d at 1091 (emphasis added). Thus, Montgomery argues. City of Bridgeport directly supports the trial court’s conclusion that a municipality may establish its population only via a decennial census conducted by the United States Census Bureau or by a municipal census conducted pursuant to § 11-47-90 et seq.[17] See also Dennis v. Pendley, 518 So.2d 688, 690 (Ala.1987) (noting that “[§ ] 28-2A-1 does not say that only a decennial census can be used to determine population” and recog.nizing, consistent with § 11-40-6, that a municipality might also determine population via a municipal census).[18]
Pike Road, howéver, cites Ryan v. City of Tuscaloosa, 155 Ala. 479, 46 So. 638 (1908), in support of its position. In Ryan, this Court considered whether Tuscaloosa could issue certain bonds in light of Ala. Const. 1901, § 225, which generally bars *654 municipalities “having ,a population of less than six thousand” from taking on debt exceeding a. defined level. 155 Ala. at 485-88, 46 So. at 641. Certain citizens of Tuscaloosa sought to prevent a referendum to decide whether the bonds would issue based on the fact that the most recent federal decennial census indicated that Tuscaloosa’s population was less than 6,000; however, this Court declined to intervene, reasoning:
“[Section 225] predicates the limitation of indebtedness upon ‘population.’ That is the condition, the fact, upon which the limitation operates. The complainant’s insistence, in legal effect, leads to the proposition—to the construction—that the ascertainment of the condition (population) must be by the last federal census. The most casual reading of the section of the organic law demonstrates that the instrument is wholly silent as to the means for the ascertainment of the population of the city or town; and a census, official though it is, is but a means-for the ascertainment of the number of persons. Can we, by construction, supply this means? We think not. If so it was ruled, the result would be, not only an unwarranted interpolation of a most material provision into the section, but also to render the section utterly unavailable, possibly for near ten years between decennial federal censuses, to towns and cities having, at the time such census was taken, less than 6,000 population, notwithstanding within a month thereafter the population was greater than 6,000. In short, under the construction urged for complainant, it is easily ■ conceivable that for nine years and more the privilege of the section would be denied to towns and cities having in fact the requisite population at the time the bonds were desired to be issued; but to such a result the makers of the Constitution have, under no interpretation, written.
“A conclusive reason, however, in support of the view expressed, is found in the fact that in other places in the instrument the decennial federal census is provided as the means for the ascertainment of the population for the purpose of apportionment of representation in the legislative branch of the government. From this it is evident that, in omitting mention of such census in the section under consideration, a clear intent is manifested to leave the ascertainment, upon occasion, of the population to means properly serviceable to that end.”
155 Ala. at 487-88, 46 So. at 641. Thus, Pike Road argues that, because § 11-40-10 does not dictate what method should be used to determine a municipality’s population, the legislature must have similarly intended, “to leave the ascertainment ... of the population to means properly serviceable to that end.” ’ 155 Ala. at 488, 46 So. at 641. Pike Road further argues that it submitted ample evidence to the trial court conclusively demonstrating that its population is now well in excess of 6,000 inhabitants. ,
Montgomery argues that Ryan is irrelevant because it involved the interpretation of a provision of the Alabama Constitution, and, it argues, “[cjonstitutional provisions are subject to completely different construction rules than are statutes.” Montgomery’s brief, at p. 26. Although we disagree with the breadth of that assertion, the fact that Ryan involved the construction of a constitutional provision while City of Bridgeport involved the construction of a statute is the basis for the different results reached in those cases.[19] Con *655 stitutional provisions stand on their own and are unaffected by statutes, even those dealing with the same subject matter. See, e.g., Ex parte Illinois Cent. GulfR.R., 537 So.2d 899, 903 (Ala.1988) (“The Legislature is without power to alter a constitutional right through statutory change”), and Board of Revenue of Jefferson Cnty. v. State, 172 Ala. 138, 149, 54 So. 757, 761 (1910) (“Constitutional mandates and restrictions cannot be altered, contracted, or expanded, by [legislative declaration].”). Thus, in. considering how to determine a municipality’s population for purposes of § 225, this Court rightly did not look to the Alabama Code, but it did look to other constitutional provisions and, after noting that at least one other provision did tie a municipality’s population to the federal decennial, census, concluded that the drafters of § 225 manifested a clear intent to leave the ascertainment of a municipality’s population for § 225 purposes “to means, properly serviceable to that end” inasmuch as they omitted any mention of the federal decennial census. 155 Ala. at 488, 46 So. at 641.
In City of Bridgeport, however, this Court was tasked with deciding the proper way to determine a municipality’s population with regard to certain specified statutes, specifically § 28-2A-1 et seq., Ala. Code 1975. Although the City of Bridgeport Court did not detail, its analysis, it apparently considered those statutes in pari materia with other statutes dealing with municipal structure and powers and concluded that “[t]he Aabama Code recognizes two methods' for determining the population of a municipality”: the federal decennial census and a municipal census conducted pursuant to § 11-47-90 et seq. 571 So.2d at 1091. Thus, although in Ryan the Court concluded that a municipality’s population could be determined by any serviceable means and in City of Bridgeport the Court concluded that a municipality’s population could be determined only by federal decennial census or municipal census, both decisions were correct, inasmuch as the statutes being interpreted in City of Bridgeport had to be read in pari materia with § 11-40-6, but, as explained in Board of Revenue of Jefferson Cnty. and Ex parte Illinois Central Gulf R.R., in Ryan, § 11-40-6, as a mere statute, had no bearing on the interpretation of § 255, a constitutional provision.
IV.
Having concluded that the trial court correctly held that a municipality’s police jurisdiction expands to include the area within three miles of the municipality’s city limits pursuant to § ll-40-10(a) only after either a federal decennial census or a municipal census establishes that the population of that municipality exceeds 6,000 inhabitants, we now turn to the other issues raised by the parties. Pike Road has also argued that the trial court was required, but failed, to take judicial notice of the fact that it had, in the unrelated *656 case of Town of Pike Road v. Taxpayers & Citizens of Pike Road, made a finding of fact that “[t]he population of [Pike Road] exceeds 6,000 residents.” Pike Road argues that it is well established both that a trial court “may take judicial notice of the population of municipalities within their jurisdiction,” Meadows v. City of Birmingham, 582 So.2d 603, 606 (Ala.Crim.App. 1991), and that “[e]ach court takes judicial knowledge of its own records,” Evans v. State, 341 So.2d 749, 750 (Ala.Crim.App. 1976); accordingly, Pike Road argues, the trial court exceeded its discretion by failing to take judicial notice of the fact that it had already found the population of Pike Road to exceed 6,000 residents in a previous proceeding before it inasmuch as Pike Road had specifically requested it to take such notice and had provided the court with all the information necessary to do so. See Rule 201(d), Ala. R. Evid. (stating that it is mandatory for a court to take judicial notice “if requested by a party and supplied with the necessary information”).
However, Pike Road fails to recognize that Rule 201, Ala. R. Evid., applies only to the judicial notice of a fact that is “not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.” Rule 201(b), Ala. R. Evid. In this case, the population of Pike Road is the subject of dispute; moreover, there is no unimpeachable source to which one can readily turn to determine that population. In other reported cases where an appellate court has taken judicial notice of the population of a municipality, that fact is generally not in dispute, and the population is easily determined by reference to a reliable source—often a census. See, e.g., Lifestar Response of Alabama, Inc. v. Lemuel, 908 So.2d 207, 219 (Ala.2004) (“We take judicial notice of the fact that the population of the City of Montgomery as of the last federal decennial census, taken in the year 2000, was 201,568.”), and Value Oil Co. v. City of Northport, 284 Ala. 103, 105, 222 So.2d 358, 359-60 (1969) (“[W]e judicially know that the population of Northport, as contained in the last Federal census, is 5,245_”). See also Taxpayers & Citizens of Fort Payne v. City of Fort Payne, 252 Ala. 231, 234, 40 So.2d 439, 441 (1949) (“The apparent purpose [of the municipal-census statutes] is to provide a procedure for obtaining an official census, with all the advantages of an official census, including a permanent official record of which a court is required to take judicial notice.”). We further note that, for all that appears, the only evidence presented in Town of Pike Road v. Taxpayers & Citizens of Pike Road indicating that the population of Pike Road exceeded 6,000 inhabitants was Pike Road’s claim to that effect; the same judgment containing that finding of fact also states that no citizen appeared “in opposition” to Pike Road’s bond-validation petition, and there is no indication that the issue of Pike Road’s population was actually litigated. For all these reasons, we conclude that the trial court in this case did not exceed its discretion by declining to take judicial notice of the finding of fact made in unrelated litigation that Pike Road’s population exceeded 6,000 inhabitants. See Henry v. Butts, 591 So.2d 849, 852 (Ala.1991) (“Whether to take judicial notice of a fact is in the discretion of the trial court.”).
V.
Finally, we must consider the effect of Pike Road’s submission to this Court of facts indicating that it has now annexed certain properties so that it is now without question that the Mt. Meigs facility is in its police jurisdiction. Pike Road argues that *657 it is proper for this Court to consider those facts even though they were never presented to the trial court because, Pike Road argues, these facts “moot” the issue whether Pike Road’s police jurisdiction extends one and one-half miles from its city limits or three miles from its city limits; either way, Pike Road argues, the Mt. Meigs facility is now undisputedly in Pike Road’s police jurisdiction. In support of this argument, Pike Road cites South Alabama Gas District v. Knight, 138 So.3d 971, 975 (Ala.2013), in which we stated that “[ejvents occurring subsequent to the entry or denial of an injunction in the trial court may properly be considered by this Court to determine whether a cause, justi-ciable at the time the injunction order is entered, has been rendered moot on appeal.”
The principle explained in Knight, however, is not applicable in the present case. First, it is evident that Pike Road does not actually want this Court to hold that this appeal is moot because doing so would require us to dismiss the appeal; in fact, Pike Road seeks a reversal of the trial court’s judgment. See Norrell v. Adams, 275 Ala. 382, 382, 155 So.2d 338, 339 (1963) (“It seems clear that the case is moot. Accordingly, we have no alternative but to dismiss the appeal. It has been held that if an event, pending appeal, makes determination of the appeal unnecessary, or renders it clearly impossible for the appellate court to grant effectual relief, the appeal will be dismissed.”). Second, the July 2015 annexations identified by Pike Road would have no effect on the correctness of the trial court’s February 11, 2015, judgment holding that Montgomery was entitled to the interpleaded funds and was the municipality authorized to exercise jurisdiction over the Mt. Meigs facility at that time. Those interpleaded funds properly belong to the municipality in whose police jurisdiction the Mt. Meigs facility was located at the time the funds were paid into the court, and, for the reasons explained supra, that municipality was Montgomery. Any changes to Montgomery’s and Pike Road’s police jurisdictions that have occurred after February 11, 2015, have no bearing on which municipality was entitled to those funds or in whose police jurisdiction the Mt. Meigs facility was located at the time of the trial court’s February 11, 2015, judgment. If events have occurred subsequent to that judgment so that there is now a new dispute regarding those police-jurisdiction boundaries and whether they have changed, Montgomery, Pike Road, Dow Corning Alabama, or any other affected party may initiate a new action seeking a judgment deciding that dispute; this Court will not endeavor to resolve that new dispute in the context of this appeal.
VI.
Pike Road appealed the judgment entered by the trial court declaring that, pursuant to § 11-40-10, Pike Road’s police jurisdiction extended only a mile and a half from its city limits inasmuch as neither a federal decennial census nor a duly conducted municipal census had established that the population of Pike Road exceeds 6,000 inhabitants. Accordingly, the trial court held that the Mt. Meigs facility was located in the police jurisdiction of Montgomery as opposed to the police jurisdiction of Pike Road. Having found no error in the trial court’s application of § 11-40-6 and § 11-40-10 or any other errors that would require a reversal, that judgment is now affirmed.
AFFIRMED.
BOLIN, PARKER, and MAIN, JJ., concur.
*658 LYONS, Special Justice, concurs in the result.*
MOORE, C.J., and MURDOCK, SHAW, and WISE, JJ., dissent.
BRYAN, J., recuses himself.

. We note that, although Dow Corning Ala- ' bama was listed as an appellee on the notice of appeal and has filed an appellee’s brief, its arguments on appeal are aligned with the arguments of the appellant, the City of Pike Road. ■ ■

. The Alabama Legislature has since amended § 11-40-10, making minor changes to the language of subsection (a) that became effective September 1, 2015. See Act No. 2015-361, Ala. Acts 2015, enacted on June 5, 2015.

. Section 11-51-206 at that time provided, in part:
“The council or other governing body shall have the authority to levy and assess by ordinance within the police jurisdiction of any said city or town all taxes authorized by this article; provided, that said levy and assessment shall not exceed one-half the amount levied and assessed for like businesses, sales or uses conducted within the corporate limits, fees and penalties excluded.”
The ■ legislature amended the language of § 11-51-206 in Act No. 2015-361, Ala, Acts 2015. See note 2, supra.

. Although § 11-51-91(c) addresses only the payment of business license fees, the parties agree that the "rule of proximity” set forth in that statute determines which municipality should exercise jurisdiction for all purposes when police jurisdictions overlap. Advisory opinions issued by the Alabama Attorney General support this view. See 197 Ala. Op. Att’y Gen. 84-00103 (November 28, 1984), and Ala. Op. Att’y Gen. No.2007-023 (December 14, 2006),

.Pursuant to § 11-40-6, Ala.Code 1975, municipalities "containing 2,000 or more inhabitants shall be called cities” and "municipalities containing less than 2,000 inhabitants shall be called towns.” It is undisputed that Pike Road has more than 2,000 inhabitants and is thus, legally, a "city.” Pike Road acknowledges this fact but states in its reply brief that it nevertheless continues to refer to itself as the "Town of Pike Road,” for most purposes, "to reflect [its] rural character.” Pike Road’s reply brief, p. 7, n.2.

. The Montgomery official who initially worked with Pike Road officials to adjust the police-jurisdiction map after Resolution, No. 006-2014 was adopted has since submitted a sworn affidavit indicating that, in developing that map, she had simply assumed that Pike Road would not have adopted a resolution without a valid legal basis.

. Dow Corning Alabama also requested- the trial court to award it attorney fees and costs out of the interpleaded funds at the conclusion of the action, as allowed by Rule 22(c), Ala. R. Civ. P.

. This Court thereafter issued an order noting that Pike Road’s notice of appeal would be held in abeyance pursuant to Rule 4(a)(5), Ala. R.App. P., until all postjudgment motions were resolved.

. Dow Corning Alabama presumably would prefer to be subject to taxation by Pike Road rather than Montgomery because, as Dow Corning Alabama recognized in its initial complaint, “the sales and use tax rates levied by Montgomery ... are higher than the rates levied by Pike Road.”

. The ambiguous statute in James was § 41— 32-2, Ala.Code 1975, and the issue before tire Court was whether certain State employees were subject to the merit system. 729 So.2d at 266-67.

. In Watkins v. Board of Trustees of Alabama State University, 703 So.2d 335, 341 (Ala. 1997), this Court identified a paragraph in Dunn as dictum and stated that, "[t]o the extent that this dictum relied on by the trial court and [the appellee] is contrary to our holding in the present case, it is disapproved.” 703 So.2d at 341. We subsequently stated in Underwood v. Alabama State University, 51 So.3d 1010, 1013 (Ala.2010), that Watkins "overruled” Dunn. In fact, however, Watkins did not overrule the holding of Dunn, it merely "disapproved” of the identified dictum,

.Section 11-40-6 states in its entirety:
"Municipal corporations now existing or hereafter organized under this title containing 2,000 or more inhabitants shall be called cities. All incorporated municipalities containing less than 2,000 inhabitants shall be called towns. The last census, whether federal or taken as authorized in this title, shall be used in determining the population of a city or town.
"At the next election more than four months after the one hundred twentieth day after the first day of the first regular business session of the Legislature held next after the publication by the federal govern *651 ment of the regular federal decennial population census for Alabama, if the municipality shows a population which authorizes a change in its government under this title, the proper officers for such a city shall be elected and perform the duties prescribed in this title."
(Emphasis added.)

. We emphasize, however, that our analysis of § 11-40-6 and § 11-40-10 is based on the plain language of those two statutes and their similar subject matter and not, as Montgomery has urged us to consider, the proximity and organization of the statutes in the Alabama Code. See § 1—1—14(a), Ala.Code 1975 ("The classification and organization of the titles, chapters, articles, divisions, subdivisions and sections of this Code, and the headings thereto, are made for the purpose of convenient reference and orderly arrangement, and no implication, inference or presumption of a legislative construction shall be drawn therefrom.”).

. Justice Murdock, in his dissent, similarly asks the question, "[g]iven that so much variation exists in the Alabama Code as to how a municipality's population should be ascertained for various purposes, why is § 11-40-6 the one statute that must be read in pari materia with all the statutes that contain no specific method of determining a municipality’s population to supply the ‘default rule’?” 202 So.3d at 664. The answer is simple: Of all the statutes cited in this case, only in § 11-40-6 did the legislature use broad language that is not limited in its scope. Compare § 11-40-6 (‘‘The last census, whether federal or taken as authorized in this title, shall be used in determining the population of a city or a town.”) with, e.g., § 11-43-2 (“In all cities and towns having a population of less than 12,000 inhabitants according to the last or any subsequent federal census, the legislative functions shall be exercised by the mayor and five aldermen.”).

. In his dissent, Justice Murdock criticizes . this opinion's interpretation of Title 11 of the Alabama Code so as to recognize a default rule in § 11-40-6, stating:
"[I]f the legislature intended there to be a rule of general application for the determination of municipal populations, .it easily could have enacted a general statute to that end, rather than leaving it to this Court to comb through other statutes in an effort to discover the existence of such a rule."
202 So.3d at 665. We note only that the legislature likewise could have enacted a general stand-alone statute articulating the default rule Justice Murdock advocates—that a municipality might endeavor to prove its population for a particular purpose by any available means unless the legislature has specifically restricted the means available as it relates to that particular purpose—but the legislature has not elected to do so.

.Giving universal effect to the legislature’s plain directive in § 11-40-6 that "[t]he last census, whether federal or taken as authorized in this title, shall be used in determining the population of a city or a town” promotes uniformity in the law not only by providing a default rule that is simple for municipalities to apply, but also by reducing the possibility of contradictory rulings in different trisil courts. For example, in this case Pike Road initially justified the extension of its police jurisdiction solely on the annual projected population estimate made by the United States Census Bureau. However, one trial court might consider such an estimate to be sufficient evidence of a municipality’s population, while another trial court might deem it to be too speculative. This possibility further highlights an additional benefit to the default rule set out by the legislature in § 11-40-6—it promotes judicial economy inasmuch as it prevents a court from being called upon to *653 weigh evidence regarding a municipality’s population. The only relevant question is instead what the last decennial federal census or a duly performed, municipal census has established the municipality's population to be.

. We further note that the City of Bridgeport specifically argued on appeal that it should be able to establish its population by any "means properly serviceable to that end”; this Court stated that there was "no merit to this argument.” 571 So.2d at 1091,

. Section 11-47-90 broadly authorizes a municipality to conduct a municipal census, and § 11-47-92, Ala.Code 1975, authorizes a city or town to elect to contract with the United States Census Bureau to perform such a census if the city or town desires. The municipal census in Dennis was apparently conducted by the United States Census Bureau pursuant to § 11-47-92. 518 So,2d at 689. As Justice Lyons notes in his separate writing, the Dennis Court did not address the limiting language of § 11-47-93, Ala.Code 1975, in its opinion, and it is ultimately unnecessary for us to consider § 11-47-93 because there is no indication that Pike Road has even contemplated employing the United States Census Bureau to conduct a municipal census.

. This Court has recognized that there are some differences that must be considered *655 when construing constitutional provisions as opposed to statutes, but it has also recognized that the same rules of construction generally apply. See, e.g., Clark v. Container Corp. of America, Inc., 589 So.2d 184, 190 n. 4 (Ala. 1991) ("The Constitution is subject to the same general rules of construction as are other laws; Alabama State Docks Dep’t v. Alabama Public Service Comm’n, 288 Ala. 716, 724, 265 So.2d 135, 143 (1972), ‘due regard being had to the broader objects and scope of the constitution as. a charter of popular government.’ 16 Am.Jur.2d Constitutional Law, § 91, at 417 (1979).”), and Summers v. State, 244 Ala. 672, 673, 15 So.2d 502, 503 (1943) (noting that, "in the main, general principles governing the construction of statutes apply also to the construction of constitutions,” but recognizing that “constitutions usually deal with larger topics and are couched in broader phrases than legislative acts”).